# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## BAY CITY DIVISION

| | |
|---|---|
| **In re:** | Chapter 11 (Subchapter V) |
| **DAVID LEWI-EMMANUEL STOCKMAN,** | Case No. 26-20982-dob |
| **Debtor.** | Hon. Daniel S. Opperman |
| _____/ | |
| **DAVID LEWI-EMMANUEL STOCKMAN, M.D.,** individually and as debtor-in-possession, | Adv. Proc. No. _____ |
| **Plaintiff,** | *(to be assigned)* |
| **v.** | |
| **COVENANT MEDICAL CENTER, INC.,** d/b/a **COVENANT HEALTHCARE;** **COVENANT HEALTHCARE SYSTEM;** **CARRIE TRAVIS, individually;** **GINNY LATTY, individually; and** **BETH CHARLTON, individually,** | |
| **Defendants.** | |
| _____/ | |

### VERIFIED ADVERSARY COMPLAINT FOR UNPAID PATHOLOGY AND MEDICAL-DIRECTION COMPENSATION, DECLARATORY RELIEF, TORTIOUS INTERFERENCE, CIVIL CONSPIRACY, AND JURY DEMAND

Plaintiff David Lewi-Emmanuel Stockman, M.D. ("Plaintiff" or "Debtor"),

appearing pro se and as debtor-in-possession in the above-captioned Chapter 11,

Subchapter V case, alleges as follows against Defendants Covenant Medical

Center, Inc., doing business as Covenant HealthCare, and Covenant HealthCare

System (collectively, the "Corporate Defendants" or "Covenant"), and Carrie

Travis, Ginny Latty, and Beth Charlton (collectively, the "Individual Defendants"). The identity and responsibility of the Covenant entities are pleaded in the alternative under Federal Rule of Civil Procedure 8(d), made applicable by Federal Rule of Bankruptcy Procedure 7008.

**PRELIMINARY STATEMENT**

1. This proceeding concerns unpaid compensation and compensation rights, including $216,000.00 in unpaid monthly compensation required by Sections 10 and 10.1 of the written Pathology/Laboratory Services Agreement, $42,962.50 in unpaid individual Pathology/Laboratory Medical Director compensation, and the separate $27,800.00 balance reflected in the 2018 physician-onboarding invoice, consisting of $20,000.00 in principal and $7,800.00 in late charges. The presently calculated direct monetary demand is $286,762.50, together with a separate course of retaliatory interference with Plaintiff's compensation relationship, contracts, medical-directorship opportunities, professional relationships, and economic expectancies.

2. The written pathology-services agreement used Covenant Pathology Associates, P.C. ("CPA") as the contracting and billing entity. Sections 10 and 10.1 required Covenant to pay $13,500.00 each month for Pathology and Medical Direction Services, while a separate provision provided hourly compensation for services personally performed by the designated Medical Director. Under

the governing corporate compensation practice, historical course of performance, prior direct payments, and CPA's authorization or ratification, Plaintiff alleges a direct, beneficial, assigned, or otherwise enforceable interest in the unpaid compensation asserted here.

**3.** After Plaintiff submitted a good-faith complaint concerning the administrative head of Covenant's laboratory, the Individual Defendants participated in, authorized, or ratified a recurring pattern under which Plaintiff's requests for Medical Director compensation were denied, decertified, delayed, or subjected to shifting objections. Plaintiff alleges that the purpose of the pattern was to retaliate against him, make his continued work at Covenant financially and professionally untenable, and cause him to leave Covenant.

4. This Complaint seeks compensation and damages belonging directly or beneficially to Plaintiff and his bankruptcy estate, including the $216,000.00 Section 10.1 receivable to the extent assigned, ratified, authorized, beneficially owned, or otherwise enforceable by Plaintiff. Plaintiff also asserts the entire $27,800.00 balance reflected in the 2018 physician-onboarding invoice, including $20,000.00 in principal and $7,800.00 in late charges, to the extent that compensation was earned for, allocated to, payable to, assigned to, ratified for, or beneficially owned by Plaintiff; alternatively, Plaintiff requests the protection and corrective procedure of Federal Rule of

Civil Procedure 17(a)(3). Plaintiff does not assert the COVID-testing receivables or any unrelated receivable belonging solely to Michigan Health Clinics, Michigan Health Clinic Laboratories, CPA, or another corporation. Exhibits K and L are placed at the end of the exhibit list solely as supplemental corporate-receivable materials for preservation and attorney review. Plaintiff requests no judgment, damages, or adjudication concerning Exhibits K or L in this adversary proceeding.

## I. JURISDICTION, VENUE, CORE/NON-CORE STATEMENT, AND JURY DEMAND

**5.** Plaintiff commenced his voluntary Chapter 11 case on July 20, 2026. Plaintiff remains in possession of property of the estate and exercises the rights and powers of a debtor-in-possession under 11 U.S.C. §§ 1107 and 1184.

**6.** This Court has subject-matter jurisdiction under 28 U.S.C. § 1334(b) because Plaintiff's legal and equitable interests in the causes of action and compensation described below are property of the bankruptcy estate under 11 U.S.C. § 541(a), and recovery will affect administration of the estate, creditor distributions, plan feasibility, and confirmation.

**7.** This adversary proceeding is referred to the Bankruptcy Court under 28 U.S.C. § 157(a) and the standing order of reference in this District.

**8.** Under Federal Rule of Bankruptcy Procedure 7008, Plaintiff states that the state-law claims are non-core but related to the bankruptcy case, except to the extent Defendants file proofs of claim or place claim allowance, setoff, recoupment, or adjustment of the debtor-creditor relationship before this Court. Plaintiff consents to entry of final orders and judgment by the Bankruptcy Court under 28 U.S.C. § 157(c)(2) to the fullest extent permitted by law.

**9.** Venue is proper under 28 U.S.C. § 1409(a) because the bankruptcy case is pending in this District, Defendants reside or conduct substantial business in this District, and material events occurred in Saginaw County, Michigan.

**10.** This Court has personal jurisdiction over the Corporate Defendants because they are Michigan nonprofit corporations headquartered in or operating from Saginaw, Michigan. Upon information and belief, the Individual Defendants are Michigan residents who worked or conducted their professions in this District, and each personally participated in, authorized, or ratified conduct occurring substantially within this District.

**11.** Plaintiff demands a jury trial on all issues so triable under Federal Rule of Civil Procedure 38, Federal Rule of Bankruptcy Procedure 9015, 28 U.S.C. § 157(e), and Local Bankruptcy Rule 9015-1. Plaintiff consents to the Bankruptcy Judge conducting the jury trial.

## II. PARTIES

**12.** Plaintiff David Lewi-Emmanuel Stockman, M.D. is an individual residing in Saginaw County, Michigan. He is a physician board-certified in dermatopathology and clinical informatics. At relevant times, he personally served as the designated Pathology/Laboratory Medical Director for Covenant's pathology and clinical-laboratory operations.

13. Plaintiff brings claims for injuries and compensation interests belonging directly or beneficially to him and his bankruptcy estate, as well as receivables assigned to, ratified for, authorized for prosecution by, or otherwise enforceable by Plaintiff, including the Section 10.1 compensation alleged below. Plaintiff does not seek unrelated corporate invoices or damages belonging solely to a separate corporation.

14. To the extent the Court determines that another person or entity retains formal legal title to any portion of the compensation receivables despite Plaintiff's beneficial, assigned, ratified, or authorized interest, Plaintiff requests application of Federal Rule of Civil Procedure 17(a)(3), made applicable by Federal Rule of Bankruptcy Procedure 7017, and a reasonable time to obtain ratification, joinder, assignment, authorization, or substitution before dismissal on real-party-in-interest grounds.

15. Defendant Covenant Medical Center, Inc. is, upon information and belief, the Michigan nonprofit corporation that operates Covenant's hospital and clinical facilities and does business as Covenant HealthCare.

16. Defendant Covenant HealthCare System is, upon information and belief, a related Michigan nonprofit parent, system, or affiliated entity that exercised control over, participated in, authorized, or ratified the conduct alleged below.

17. Defendant Carrie Travis is an individual who, at relevant times, held a laboratory administrative and leadership position at Covenant, participated in the review, approval, certification, decertification, and payment process for Plaintiff's Medical Director submissions, and communicated directly with or concerning Plaintiff about those submissions.

18. Defendant Ginny Latty is an individual who, at relevant times, served as a Covenant vice president or senior administrator, signed the operative pathology-services agreement for Covenant Medical Center, participated in the review or approval of Plaintiff's Medical Director compensation, and exercised authority over the laboratory administrative personnel involved in that process.

19. Defendant Beth Charlton is an individual who, at relevant times, served in senior Covenant administration and later became Covenant's President and Chief Executive Officer. Upon information and belief, Charlton possessed

managerial authority over the administrative response to Plaintiff's laboratory complaint and participated in, authorized, approved, adopted, or ratified the recurring compensation-denial strategy alleged below.

20. Covenant entities used the names Covenant HealthCare, Covenant Medical Center, Covenant HealthCare System, and related operational names in communications and business dealings. Plaintiff therefore pleads their identity and responsibility in the alternative until Defendants disclose the relevant organizational, contracting, payment, agency, and ratification records.

21. At relevant times, Covenant also acted through officers, directors, administrators, medical-staff leaders, employees, agents, and persons acting in concert with them, including, upon information and belief, David Nall, Larry Daly, Shane Starr, Jennifer Norfleet, Ann Werle, Frank Fear, Eugene Olsowka, and others presently known or later identified through discovery.

22. The acts of Travis, Latty, and Charlton are pleaded in the alternative. To the extent they acted within actual or apparent authority or their conduct was authorized or ratified, the Corporate Defendants are liable for that conduct. To the extent they acted outside legitimate corporate duties, for independent personal or retaliatory interests, or solely to protect themselves or other

administrators from scrutiny, the Individual Defendants are personally liable for their own tortious acts.

## III. FACTUAL ALLEGATIONS

### A. Medical Director Compensation Policy and Course of Performance

**23.** Plaintiff served in medical and laboratory leadership for Covenant beginning approximately in 2016. Effective November 1, 2018, Covenant Medical Center, Inc. and CPA entered a written agreement for pathology and laboratory services.

**24.** The agreement designated Plaintiff to personally act as the Pathology/Laboratory Services Medical Director, subject to Covenant approval, and required the designated Medical Director to personally perform specified quality, compliance, administrative, consultation, staffing, policy, complaint-review, equipment, and medical-staff duties.

25. The agreement separately addressed two compensation streams. Sections 10 and 10.1 required Covenant to pay $162,000.00 annually for Pathology and Medical Direction Services in twelve monthly installments of $13,500.00. A separate Medical Director stipend provision required Covenant to pay $170.00 for each approved hour personally worked by the designated Medical Director, with payment on the monthly invoice following the month in which the service was performed.

26. Under the written agreement, Covenant Medical Center agreed to pay a separate hourly stipend for services personally performed by the designated Pathology/Laboratory Services Medical Director. Although the stipend was administratively invoiced through Covenant Pathology Associates, P.C. ("CPA"), the stipend was calculated solely from the individual Medical Director's approved hours and services.

27. At all relevant times, CPA maintained an established corporate compensation policy under which medical-director stipends attributable to an employed or contracted physician were allocated and paid to the physician who personally performed the corresponding medical-director services. CPA did not treat those stipends as ordinary corporate pathology-service revenue.

28. Consistent with that policy, medical-director stipends paid by Covenant for Plaintiff's previously approved services were routinely paid or credited directly to Plaintiff. Covenant knew of this arrangement through the parties' course of dealing, Plaintiff's individualized MediTract submissions, communications directly with Plaintiff concerning his hours, and Covenant's prior approval and payment of Plaintiff's Medical Director services.

29. Plaintiff personally performed and submitted the disputed Medical Director services. Covenant addressed its requests for additional documentation directly to Plaintiff, unlocked Plaintiff's individualized timesheets for

correction, and acknowledged that payment depended upon the adequacy of Plaintiff's documentation.

30. Accordingly, Plaintiff possesses the beneficial interest in the unpaid Medical Director compensation and was the intended recipient of the stipend under CPA's established compensation policy and the parties' course of performance. Alternatively, if CPA retained formal legal title to any portion of the stipend, CPA held that right for Plaintiff's benefit, and Plaintiff requests application of Federal Rule of Civil Procedure 17(a)(3) to permit confirmation or completion of any necessary ratification, assignment, authorization, joinder, or substitution through the governing corporate records before dismissal on real-party-in-interest grounds.

**B. Administrative Complaint and Recurring Denial of Medical-Director Compensation**

31. Before or during the relevant compensation period, Plaintiff filed or made a good-faith internal complaint concerning the administrative head of Covenant's laboratory and laboratory-administration practices. The complaint concerned matters Plaintiff believed affected laboratory operations, compliance, patient safety, quality, staffing, documentation, or administration.

32. Travis, Latty, and Charlton knew of Plaintiff's complaint or learned of it through Covenant's administrative chain. The complaint subjected laboratory administration and those responsible for supervising it to potential scrutiny and accountability.

33. After the complaint, whenever Plaintiff submitted or pursued Medical Director compensation during the relevant period, Travis and Latty, with Charlton's knowledge, authorization, approval, or later ratification, denied, decertified, delayed, or returned the submission while asserting an issue with the request.

34. The asserted grounds were recurring, shifting, serial, or pretextual. Defendants demanded levels or forms of detail that had not been consistently required during the parties' prior course of performance, questioned selected entries while withholding payment for all time, and failed to pay even hours that were not specifically disputed.

35. When Plaintiff attempted to respond to one stated objection, Defendants raised additional objections, required further revisions, restricted the time during which the submission could be edited, or failed to issue a final itemized accounting. The process made approval dependent on persons who were using the approval process as a retaliatory barrier.

36. The recurring denials were intended to punish Plaintiff for his complaint, discourage further compliance advocacy, deprive him of compensation

generated by his professional work, make his continued position at Covenant financially and professionally untenable, and cause him to resign or otherwise leave Covenant.

37. Plaintiff nevertheless continued to perform Medical Director services that Covenant needed and accepted. The fact that Defendants disputed, delayed, or refused compensation does not establish that the underlying Medical Director work was not performed.

38. From September 2020 through November 2021, Plaintiff continued serving as Covenant's designated Pathology/Laboratory Medical Director and continued performing the ongoing regulatory, quality, compliance, consultation, policy, personnel-oversight, and laboratory-administration duties Covenant required and accepted, but Covenant failed to pay Plaintiff the Medical Director compensation attributable to that period.

39. The presently documented monthly amounts are: September 2020 - $2,550.00; October 2020 - $2,720.00; November 2020 - $2,550.00; December 2020 - $2,592.50; and January 2021 - $2,550.00. Those documented amounts total $12,962.50.

40. Separately, Covenant failed to pay the full $27,800.00 balance reflected in the 2018 physician-onboarding invoice, consisting of $20,000.00 in principal and $7,800.00 in late charges. Covenant was repeatedly notified of the unpaid

invoice, and the April 12, 2021 billing communication expressly described it as deeply outstanding. Plaintiff alleges that the invoiced compensation and late charges are payable for his benefit under CPA's compensation policy and the parties' course of performance. Alternatively, if CPA retained formal legal title, Plaintiff requests application of Rule 17(a)(3) before dismissal on real-party-in-interest grounds.

41. For February 2021 through November 2021, where a final invoice or approved monthly amount is not presently available because Defendants repeatedly decertified, delayed, restricted, or frustrated the submission and approval process, Plaintiff values the unpaid Medical Director services at $3,000.00 per month. Those ten months equal $30,000.00. Added to the documented $12,962.50, the unpaid Medical Director compensation is $42,962.50. Adding the $27,800.00 2018 physician-onboarding invoice balance, including its $7,800.00 in late charges, produces presently calculated direct damages of $70,762.50, subject to reconciliation after production of Covenant's MediTract, payroll, accounts-payable, approval, invoice, and payment records.

42. The absence of a completed invoice or final MediTract approval for a particular month does not establish that Plaintiff performed no Medical Director work, waived compensation, or intended to provide free professional

services. Medical Director responsibilities were continuous and regulatory in nature, and Covenant knowingly received and retained the benefit of Plaintiff's ongoing availability, oversight, judgment, and compliance responsibility.

43. Covenant's own October 26, 2021 communication acknowledged that several outstanding months contained entries that could be compensated and proposed unlocking the months so Plaintiff could remove questioned entries and obtain payment for the remaining compensable work. Covenant nevertheless did not pay the undisputed compensable entries or provide a complete accounting.

44. Plaintiff responded to Covenant's stated objections and supplied additional explanations, including explanations separating CAP deficiency-response meeting work from policy work, confirming attendance or participation, supplying requested patient identifiers, and clarifying quality-review, policy-review, and laboratory-oversight activities.

45. Defendants failed to pay the undisputed or compensable portions, failed to issue a complete final accounting identifying every allowed and disallowed entry, and failed to identify a contractual basis for withholding all Medical Director compensation for the entire period.

**46.** After repeated efforts to obtain payment and comply with recurring, shifting, and serial demands, Plaintiff eventually stopped repeatedly resubmitting or pursuing the same monthly compensation because Defendants had rendered the process futile. Plaintiff did not thereby waive payment, concede that the services were not performed, or agree that Covenant could retain the benefit of his services without compensation.

47. Plaintiff repeatedly demanded payment and an accounting. Before adding the separate Section 10.1 monthly compensation, the presently calculated direct monetary amount was $70,762.50, consisting of $42,962.50 in unpaid individual Medical Director compensation and the full $27,800.00 balance of the 2018 physician-onboarding invoice, including $7,800.00 in late charges. Adding the $216,000.00 Section 10.1 obligation produces a presently calculated direct monetary demand of $286,762.50, less any payment Covenant proves was made, together with allowable interest and all additional amounts established through discovery.

**C. Unpaid Section 10 and 10.1 Compensation for Pathology and Medical Direction Services**

48. Section 10 of the written Pathology/Laboratory Services Agreement is entitled "Compensation for Pathology & Medical Direction Services." Section 10.1 required Covenant to pay Covenant Pathology Associates, P.C. annual

compensation of $162,000.00 in twelve equal monthly installments of $13,500.00.

49. Covenant made the monthly Section 10.1 payments during the parties' course of performance. The last Section 10.1 check was received in July 2020. Covenant thereafter failed to pay sixteen monthly installments due under Sections 10 and 10.1 through the end of the agreement in October 2021.

50. Sixteen unpaid monthly installments at $13,500.00 per month total $216,000.00. Covenant continued to receive and retain the Pathology and Medical Direction Services covered by Section 10.1 while withholding the required monthly compensation.

51. The $216,000.00 Section 10.1 obligation is separate from the $42,962.50 in unpaid individual Medical Director stipend compensation and the $27,800.00 balance of the 2018 physician-onboarding invoice, including its late charges.

52. Plaintiff alleges that he possesses the direct, beneficial, assigned, ratified, or otherwise authorized right to prosecute the unpaid Section 10.1 receivable. Alternatively, to the extent CPA retains formal legal title, Plaintiff requests application of Federal Rule of Civil Procedure 17(a)(3) and a reasonable opportunity for ratification, joinder, assignment, authorization, or substitution rather than dismissal.

**D. Continuing Retaliatory Conduct and Interference with External Relationships**

53. The recurring obstruction of Plaintiff's Medical Director compensation was part of a broader retaliatory course of conduct. After Plaintiff raised compliance and administrative concerns, Covenant's relationship with Plaintiff deteriorated, and Defendants acted to end or refuse to continue his directorship relationship and impair his professional standing and business opportunities outside Covenant.

54. Plaintiff had existing contracts, negotiations, credentialing processes, or concrete business expectancies for medical-director, pathology, and laboratory services with Hills & Dales General Hospital, Scheurer Hospital, McKenzie Hospital, Marlette Hospital, and Harbor Beach Hospital, among other specifically identifiable regional institutions. These relationships involved actual service relationships, offers, negotiations, credentialing, communications, or established courses of dealing, rather than a generalized hope of future business.

55. Defendants knew of Plaintiff's relationships and expectancies through regional hospital networks, credentialing and medical-staff communications, shared personnel, direct communications, and Covenant's knowledge of Plaintiff's professional activities.

56. Within the three years preceding this Complaint, and as part of a continuing coordinated course of conduct, Covenant and persons acting for or with it intentionally communicated, supplied, encouraged the use of, or ratified adverse information and conduct directed to hospital decision-makers, physicians, employees, referral sources, business partners, and media contacts for the purpose of causing third parties to terminate, decline, avoid, or burden their relationships with Plaintiff.

57. Upon information and belief, David Nall solicited Eugene Olsowka, a current or former Covenant-connected employee who had previously worked with Plaintiff, to disparage Plaintiff or supply adverse material concerning him.

58. Upon information and belief, Covenant-connected personnel threatened, pressured, or leveraged Olsowka's continued employment or professional relationship, after which Olsowka participated in litigation or adverse communications directed against Plaintiff and his business interests.

59. Upon information and belief, a nonpublic governmental or administrative complaint or related material was disclosed through a chain that included Tessa Dake, David Nall or other Covenant personnel, Marcus Atkins, Russell Bush, Stephan Gaus, and media contacts. Covenant's receipt, transmission, encouragement, or ratification of the material was used as leverage against Plaintiff's contracts and professional relationships.

60. Plaintiff does not plead a standalone defamation or false-light count in this action. Speech-related allegations are pleaded as facts showing motive, wrongful means, concerted action, authorization, ratification, and interference with specifically identified contracts and business expectancies.

61. The challenged conduct was not confined to a legitimate peer-review or quality-improvement process. The alleged acts included dissemination beyond legitimate review channels, coercion or leverage directed at employees and third parties, misuse of confidential or restricted material, public or semi-public humiliation, targeted financial pressure, and targeted interference with external contracts and economic relationships.

62. To the extent Defendants invoke peer-review or quality-improvement protections, Plaintiff alleges that the challenged communications and acts occurred outside a duly constituted review function, were disseminated beyond persons entitled to receive them, were undertaken in bad faith or with malice, and were used for retaliatory or competitive purposes rather than legitimate patient-care review.

63. Upon information and belief, the Individual Defendants possessed independent personal stakes in the retaliatory conduct, including avoiding scrutiny or accountability arising from Plaintiff's laboratory complaint, protecting their positions or professional reputations, and punishing or removing the person

who made the complaint. To that extent, they acted on their own behalf and outside legitimate corporate purposes.

64. Alternatively, to the extent the wrongful acts were undertaken within actual or apparent authority, authorized by managerial personnel, or ratified after notice, the Corporate Defendants are liable for those acts. Covenant also benefited from the elimination or impairment of Plaintiff as a critic, contracting physician, or regional laboratory-services provider.

65. As a direct and foreseeable result, Plaintiff was deprived of earned compensation, and third parties terminated, declined, failed to renew, or made more difficult Plaintiff's contracts, directorships, credentialing, referral relationships, and other professional opportunities, including opportunities associated with Hills & Dales and Scheurer.

66. Plaintiff suffered direct personal damages, including unpaid Medical Director compensation, lost directorship fees, lost future professional earnings, loss of specific business opportunities, damage to professional goodwill, costs incurred responding to the coordinated conduct, and other consequential losses.

67. The full amount of tort damages requires document discovery, third-party discovery, and expert economic analysis. Plaintiff seeks all direct,

consequential, and future economic damages established through discovery and proven at trial, without duplicative recovery.

## IV. CLAIMS FOR RELIEF

## COUNT I - DECLARATORY JUDGMENT REGARDING MEDICAL-DIRECTOR COMPENSATION

68. Plaintiff incorporates paragraphs 1 through 67 as if fully restated.

69. An actual controversy exists concerning whether Plaintiff possesses the direct, beneficial, assigned, ratified, authorized, or otherwise enforceable right to: (a) the compensation generated by his personal Medical Director services; (b) the sixteen unpaid Section 10.1 monthly installments totaling $216,000.00; and (c) the full $27,800.00 2018 physician-onboarding invoice balance, including late charges.

70. The individual Medical Director stipend was calculated from Plaintiff's services and historically paid or credited to him under the established compensation policy and course of performance. Separately, Sections 10 and 10.1 required monthly compensation of $13,500.00 for Pathology and Medical Direction Services, and sixteen unpaid installments total $216,000.00. The presently calculated compensation and invoice claims asserted by Plaintiff total $286,762.50.

71. Plaintiff therefore alleges a direct, equitable, beneficial, assigned, ratified, authorized, or otherwise enforceable interest in the unpaid compensation and invoice claims, and that interest became property of the bankruptcy estate under 11 U.S.C. § 541(a).

72. Plaintiff requests a declaration that he may prosecute the unpaid compensation and invoice claims asserted in this Complaint, presently calculated at $286,762.50; alternatively, Plaintiff requests the Rule 17(a)(3) procedure for ratification, joinder, assignment, authorization, or substitution before dismissal.

**COUNT II - BREACH OF CONTRACT AS INTENDED THIRD-PARTY BENEFICIARY**

73. Plaintiff incorporates paragraphs 1 through 72 as if fully restated.

74. The Corporate Defendants entered a valid written agreement under which Sections 10 and 10.1 required payment of $162,000.00 annually for Pathology and Medical Direction Services in twelve monthly installments of $13,500.00, and a separate provision required payment of an hourly stipend for services personally performed by the designated Medical Director.

75. Plaintiff was specifically designated to perform the Medical Director duties and personally supplied services within the Pathology and Medical Direction Services covered by the agreement. Plaintiff alleges that he is the intended

and beneficial recipient of the individual stipend and possesses an assigned, ratified, authorized, or otherwise enforceable interest in the Section 10.1 receivable and the 2018 invoice balance.

76. Plaintiff and CPA performed the Pathology and Medical Direction Services required by the agreement, and Plaintiff personally performed compensable Medical Director services. Covenant continued receiving and retaining those services after its last Section 10.1 check was received in July 2020.

77. The Corporate Defendants breached by failing to pay sixteen Section 10.1 monthly installments of $13,500.00, totaling $216,000.00; withholding the documented individual Medical Director amounts; refusing to pay undisputed and compensable entries; failing to compensate Plaintiff for the remaining months of individual Medical Director work; and failing to pay the full $27,800.00 2018 invoice balance, including late charges.

78. To the extent final approval was a condition of payment, that condition was excused, waived, or deemed satisfied because Defendants controlled and intentionally hindered, obstructed, or prevented completion of the approval process and may not rely on a failure they caused.

79. The recurring use of shifting objections and serial documentation demands to prevent payment also violated the contractual obligation not to hinder or prevent performance of the compensation provision.

80. The breach caused presently calculated direct damages of $286,762.50, consisting of $216,000.00 in unpaid Section 10.1 monthly compensation, $42,962.50 in unpaid individual Medical Director compensation, and the full $27,800.00 balance of the 2018 physician-onboarding invoice, including $7,800.00 in late charges, plus prejudgment interest and other recoverable damages.

**COUNT III - UNJUST ENRICHMENT / QUANTUM MERUIT (IN THE ALTERNATIVE)**

81. Plaintiff incorporates paragraphs 1 through 80 as if fully restated.

82. This count is pleaded in the alternative to the extent the Court determines that Plaintiff cannot directly enforce the written agreement.

83. Plaintiff personally conferred valuable medical, regulatory, quality, compliance, consultation, and administrative benefits on the Corporate Defendants.

84. The Corporate Defendants knew of, requested, accepted, and retained those benefits.

85. Plaintiff reasonably expected to receive the historically paid Medical Director compensation for his personal services, and Defendants knew or should have known that the designated physician was compensated for those services.

86. It would be inequitable for the Corporate Defendants to retain the benefit of Plaintiff's compensable work while withholding the compensation generated by that work.

87. Plaintiff is entitled to the reasonable value of the unpaid services and compensation. The unpaid Section 10.1 installments total $216,000.00; the unpaid individual Medical Director compensation totals $42,962.50; and the 2018 invoice balance totals $27,800.00, producing presently calculated direct monetary relief of $286,762.50, plus interest and any additional amount established through discovery.

**COUNT IV - PROMISSORY ESTOPPEL (IN THE ALTERNATIVE)**

88. Plaintiff incorporates paragraphs 1 through 87 as if fully restated.

89. Through Sections 10 and 10.1, the separate Medical Director stipend provision, prior payments, the parties' historical course of performance, the individualized MediTract process, direct communications, and the 2018 invoice, the Corporate Defendants made clear promises that the required monthly Pathology and Medical Direction Services compensation, individual Medical Director compensation, and invoice balance would be paid.

90. Defendants reasonably expected the promise to induce Plaintiff to perform, remain available, document his time, and undertake the professional and regulatory responsibilities of Medical Director.

91. Plaintiff reasonably relied by performing the services and incurring corresponding professional responsibility and opportunity costs.

92. Plaintiff was harmed when Defendants withheld payment, and injustice can be avoided only by enforcing the promise to the extent no contract remedy is available.

**COUNT V - TORTIOUS INTERFERENCE WITH PLAINTIFF'S COMPENSATION RELATIONSHIP AND BUSINESS EXPECTANCY (AGAINST TRAVIS, LATTY, AND CHARLTON)**

93. Plaintiff incorporates paragraphs 1 through 92 as if fully restated.

94. Plaintiff had a valid compensation relationship and a concrete, reasonable expectancy with CPA, MHC, or the affiliated professional corporation responsible for processing his compensation, under which Medical Director fees generated by Plaintiff's work would be passed through or credited to him as additional professional compensation.

95. Travis, Latty, and Charlton knew of Plaintiff's compensation relationship and expectancy through the contract, prior payments, the individualized MediTract process, payroll or pass-through practices, and their direct participation in compensation administration.

96. The Individual Defendants were not parties to Plaintiff's separate compensation relationship with the professional corporation responsible for paying him.

They intentionally interfered with that relationship by obstructing approval and payment by Covenant, thereby preventing the corresponding pass-through or credit to Plaintiff.

97. The interference was accomplished through wrongful means, including retaliation for Plaintiff's laboratory complaint, selective or serial decertification, shifting and pretextual objections, imposition of new documentation demands, refusal to pay undisputed time, obstruction of the approval process, and the use of financial pressure to force Plaintiff to leave Covenant.

98. Upon information and belief, the Individual Defendants acted outside legitimate corporate duties and for independent personal interests, including avoiding scrutiny or accountability, protecting their positions or professional reputations, punishing Plaintiff for his complaint, and causing him to leave. Their retaliatory conduct served no legitimate interest of Covenant in obtaining and retaining competent, compliant laboratory medical leadership.

99. Alternatively, if the Individual Defendants acted within actual or apparent authority or their conduct was authorized or ratified, the Corporate Defendants are liable for the resulting interference and damages.

100. But for the Individual Defendants' interference, Covenant would have approved and paid the compensable Medical Director time and the

corresponding compensation from September 2020 through November 2021 would have been paid or credited to Plaintiff.

101. The interference directly and proximately caused Plaintiff to lose earned compensation and suffer additional consequential and professional damages in an amount to be proven at trial.

## COUNT VI - TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS AND BUSINESS EXPECTANCIES (AGAINST THE CORPORATE DEFENDANTS)

102. Plaintiff incorporates paragraphs 1 through 101 as if fully restated.

103. Plaintiff had valid existing contractual relationships and concrete, reasonable business expectancies with Hills & Dales, Scheurer, and other specifically identifiable institutions and decision-makers.

104. The Corporate Defendants knew of those relationships and expectancies.

105. The Corporate Defendants intentionally induced or caused breaches, terminations, nonrenewals, refusals, delays, additional burdens, or loss of those relationships and expectancies.

106. The Corporate Defendants used wrongful means, including coercion, misuse or dissemination of restricted or nonpublic material, coordinated retaliation, knowingly false or misleading factual assertions, inducement of adverse

litigation or communications, and conduct outside legitimate peer-review channels.

107. The Corporate Defendants acted for improper purposes, including retaliation against Plaintiff for raising compliance concerns and elimination or impairment of Plaintiff as a critic or competitor.

108. But for the Corporate Defendants' interference, there was a reasonable probability that Plaintiff's contracts and expectancies would have continued or been realized.

109. The Corporate Defendants' interference directly and proximately caused substantial damages in an amount to be established through discovery and proven at trial.

**COUNT VII - CIVIL CONSPIRACY TO COMMIT TORTIOUS INTERFERENCE**

110. Plaintiff incorporates paragraphs 1 through 109 as if fully restated.

111. The Corporate Defendants, the Individual Defendants, and one or more outside participants agreed expressly or tacitly to accomplish the unlawful objective of interfering with Plaintiff's compensation relationship, contracts, and business expectancies, or to accomplish a lawful objective through unlawful means.

112. Additionally and alternatively, the Individual Defendants acted for independent personal stakes, including avoiding scrutiny or accountability arising from Plaintiff's laboratory complaint, protecting their positions or reputations, punishing Plaintiff, and causing him to leave Covenant.

113. Participants committed overt acts in furtherance of the common plan, including obstructing Medical Director compensation, soliciting adverse material, leveraging employment relationships, transmitting nonpublic or restricted material, coordinating humiliating displays and messaging, contacting decision-makers and media, and encouraging litigation or other pressure against Plaintiff.

114. The independently actionable torts underlying this count are the tortious interference claims alleged in Counts V and VI. Plaintiff does not seek recovery for conspiracy in the absence of an independently actionable tort.

115. The Corporate Defendants are liable for their own participation, conduct of agents acting within actual or apparent authority, conduct authorized by managerial personnel, and conduct ratified after notice. The Individual Defendants are liable for their own tortious participation to the extent they acted outside legitimate corporate purposes or for independent personal interests.

116. The conspiracy directly and proximately caused substantial damages in an amount to be established through discovery and proven at trial, without duplicative recovery.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in his favor and against Defendants, jointly and severally where permitted, and award:

A. A declaration that Plaintiff possesses a direct, beneficial, assigned, ratified, authorized, or otherwise enforceable interest in the unpaid compensation and invoice claims asserted here, presently calculated at $286,762.50, including $216,000.00 under Sections 10 and 10.1, $42,962.50 in individual Medical Director compensation, and the full $27,800.00 balance of the 2018 physician-onboarding invoice, including $7,800.00 in late charges;

B. On Count II, compensatory damages against the Corporate Defendants in the presently calculated amount of $286,762.50, less any payment proved, or such other amount established from Covenant's records, together with prejudgment interest and recoverable consequential damages;

C. On Counts III and IV, restitution, quantum-meruit recovery, or enforcement of Covenant's promises sufficient to recover the unpaid

compensation and invoiced late charges, presently calculated at $286,762.50, to the extent contract recovery is unavailable, without duplicative recovery;

**D.** On Count V, judgment against Travis, Latty, and Charlton for the direct and consequential damages caused by their interference with Plaintiff's compensation relationship and expectancy, with alternative corporate liability to the extent their conduct was authorized or ratified;

**E.** On Counts VI and VII, all direct, consequential, and future economic damages established through discovery and proven at trial, without duplicative recovery;

**F.** Exemplary damages only to the extent Michigan law permits them as compensation for actual injury caused by independent tortious conduct, and not as an impermissible punitive award;

**G.** Prejudgment interest as allowed by applicable law and post-judgment interest under 28 U.S.C. § 1961;

**H.** Taxable costs;

**I.** Appropriate declaratory and equitable relief to prevent continuing interference and to require preservation, return, or lawful handling of confidential or restricted materials, to the extent supported by the evidence and permitted by law; and

**J.** All other relief the Court deems just and proper.

## JURY DEMAND AND CONSENT

Plaintiff demands a jury trial on all issues so triable and consents to the Bankruptcy

Judge conducting the jury trial under 28 U.S.C. § 157(e) and Local Bankruptcy

Rule 9015-1.

**VERIFICATION UNDER 28 U.S.C. § 1746**

I, David Lewi-Emmanuel Stockman, M.D., declare under penalty of perjury that I have read the foregoing Verified Adversary Complaint; that the factual allegations stated from my personal knowledge are true and correct; and that allegations stated upon information and belief are believed to be true after reasonable inquiry.

*Respectfully submitted,*
**/s/ David Lewi-Emmanuel Stockman, M.D.**
David Lewi-Emmanuel Stockman, M.D., Pro Se
5805 McCarty Road
Saginaw, Michigan 48603
Telephone: (989) 341-3017
Email: dstockma4@icloud.com
Dated: July 27, 2026

# INDEX OF EXHIBITS

*Exhibits Attached to the Verified Adversary Complaint*

| Exhibit | Description | Pages |
|---|---|---|
| A | Pathology/Laboratory Services Agreement between Covenant Medical Center, Inc. and Covenant Pathology Associates, P.C., effective November 1, 2018. Includes Sections 10 and 10.1 ($162,000 annually, payable in $13,500 monthly installments) and the separate Medical Director stipend provision. | 11 pages |
| B | April 1, 2019 TERMS/MediTract approval notice identifying Plaintiff as the Reporting Party and approving 16.50 Medical Director hours in the amount of $2,805.00. | 2 pages |
| C | July 22, 2019 Medical Director time inquiry reflecting Covenant's individualized review process and request that Plaintiff supplement a time entry. | 1 page |
| D | Unredacted February 21-March 1, 2021 email chain concerning Plaintiff's September-November 2020 Medical Director submissions, decertification issues, responses, and reopening of the submissions. | 5 pages |
| E | April 12, 2021 Medical Directorship Invoices email identifying approved but unpaid December 2020 and January 2021 amounts and unpaid September-November 2020 amounts. | 1 page |
| F | 2018 physician-onboarding invoice reflecting $20,000.00 principal and $7,800.00 in late charges, for a total balance due of $27,800.00. | 1 page |
| G | September 10-13, 2021 Directorship Payments email chain documenting Plaintiff's notice of nonpayment and Ginny Latty's response concerning MediTract. | 2 pages |
| H | September 14, 2021 Directorship Payments email documenting Plaintiff's renewed demand and Ginny Latty's response that issues remained with submitted timesheets. | 2 pages |
| I | October 26, 2021 Outstanding Medical Director Time & Payment email acknowledging that outstanding months contained compensable entries and listing the status of disputed months. | 3 pages |
| J | September 12, 2021 Nicholas Hruby correspondence describing a similar experience with the Medical Director payment and documentation process. | 3 pages |
| K | SUPPLEMENTAL CORPORATE CLAIM MATERIAL - Michigan Health Clinic Laboratories COVID-19 testing Invoice No. 2029124, balance due $111,280.00. Not asserted by Plaintiff individually. | 1 page |
| L | SUPPLEMENTAL CORPORATE CLAIM MATERIAL - Michigan Health Clinic Laboratories COVID-19 testing Invoice No. 2029125, balance due $14,640.00. Not asserted by Plaintiff individually. | 1 page |

*Note: Exhibits K and L are appended solely as supplemental corporate-claim materials and are not included in Plaintiff's individual monetary demand.*

26-20982-dob   Doc 102   Filed 07/27/26   Entered 07/27/26 15:58:22   Page 37 of 37