# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

In re:                                              Case No. 26-20982-dob

DAVID LEWI-EMMANUEL STOCKMAN        Chapter 11

                Debtor.                    Hon. Daniel S. Opperman

_____/

## GOF FINANCE-C, LLC'S MOTION FOR AUTHORITY TO TAKE DEPOSITION OF DEBTOR AND REQUEST PRODUCTION OF DOCUMENTS PURSUANT TO FED. R. BANKR. P. 2004

GOF Finance-C, LLC (the "Movant"), files its *Motion for Authority to Take Deposition of Debtor and Request Production of Document Pursuant to Fed. R. Bankr. P. 2004* (the "Motion"), and in support of its Motion, the Movant states as follows:

### BACKGROUND AND JURISDICTION

1. On June 26, 2026 (the "Petition Date"), David Stockman ("Debtor") filed this bankruptcy case under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code")[1].

---

[1] Except as otherwise noted to the contrary, (1) all section references herein are references to sections of the Bankruptcy Code, (2) all references to "FRBP" are references to the Federal Rules of Bankruptcy Procedure, and (3) all references to DN are references to docket numbers.

{01182378.2}                1

2. This is the 10th bankruptcy that Debtor has filed over the last 18 months on behalf of himself and his entities[2].

3. The Debtor is in possession of his assets pursuant to section 1108.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

5. Venue of the Case and this Motion in this District is proper pursuant to 28. U.S.C. §§ 1408 and 1409.

6. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

7. The bases for the relief requested herein are section 105(a) and FRBP 2004.

## BACKGROUND

8. Movant obtained a Judgment against Debtor as well as several of his entities in the Montgomery County Common Pleas Court in Dayton Ohio on December 10, 2024. See Judgment, **Exhibit B**.

9. On February 4, 2025, Movant domesticated the judgment to Michigan by filing in the Saginaw County Circuit Court. See Affidavit And Notice Of Entry of Foreign Judgment, **Exhibit C.**

---

[2] Debtor is not an attorney.

10. For the last 18 months, Movant has attempted to proceed with ordinary collection attempts, but Debtor has continuously used improper legal tricks to thwart these attempts.

11. Twice on the eve of foreclosures against real property owned by one of Debtor's entities, Debtor filed that entity into Chapter 11 without an attorney. Each of these bankruptcies was dismissed shortly after it was filed. See, e.g., Transcript, **Exhibit D**. The Debtor never filed schedules on behalf of his entities. He also never filed schedules in his previously filed personal bankruptcy.

12. Later, after Movant properly served Debtor with a subpoena for document production and attendance at a creditor's examination, Debtor simply ignored the subpoena, did not produce any documents, and did not attend his creditors examination. See Subpoena, **Exhibit E**.

13. After Movant filed a Motion to hold Debtor in contempt, Debtor simply showed up at the hearing and informed Movant and the Saginaw County Circuit Court that the case had been removed to the Eastern District of Michigan based on its alleged relation to one of the entity bankruptcies that had been dismissed months earlier.

14. After the District Court ruled the removal was inappropriate and was on the eve of remanding back to the state court, Debtor filed this bankruptcy so he

would not have to face the still pending contempt motion.  <u>See</u> District Court Opinion, **Exhibit F.**

15. Debtor has never produced the documents required by the Movant's state court subpoena or appeared at the creditor's examination the subpoena required.

16. This case was filed on June 26, 2026.  The Debtor was required to file documents disclosing his assets and liabilities by July 10, 2026.  The Debtor failed to do so.

17. This Court entered a Show Cause Order on July 16, 2026, setting a hearing on July 23, 2026 on why this case should not be dismissed.  <u>See</u> DN 38.

18. On June 22 and 23, 2026, Debtor filed some – but not all – of the required documents.  <u>See</u> DNs 52, 56, 59, 63, 68, 69, 70, 71, 73 and 74.

19. As of the filing of this Motion, almost two weeks later, Debtor still has not filed the remainder of his required documents.

20. However, the Schedules filed to date appear to be woefully deficient and what information has been provided leads to more questions than answers.  By way of example only:

    A. Debtor has filed five adversary complaints, but does not list claims against any of the parties he sued in his Schedules;

    B. Debtor claims to not know his ownership percentage in Michigan Health Clinics, P.C., which is his sole source of income and where he is the primary, if not only, physician;

C. Debtor claims all of his interest in entities are listed on the "attached continuation", but there is no continuation attached to the Schedules;

D. Debtor claims to have no information concerning his retirement accounts;

E. Debtor claims that his interest in intellectual property is also on the non-existent "continuation";

F. Debtor claims amounts that are owed to him are also on the non-existent "continuation";

G. Debtor claims that his claims against third parties are also on the non-existent "continuation";

H. Debtor claims that his other financial assets not already listed are also on the non-existent "continuation"; and

I. Debtor claims to have no legal or equitable interest in any business-related property. This differs from the position that Debtor has taken in litigation with Movant where he claims to have an interest in certain real estate previously owned by one of his entities[3].

See DN 63.

### RELIEF REQUESTED

21. The Movant respectfully requests the Court grant the Movant leave to conduct FRBP 2004 examination of Debtor, and to obtain production of

---

[3] Movant believes that this position has no merit. But, in any event, Debtor's schedules should reflect any property the Debtor has claimed in numerous court filings to have an interest in.

documents from Debtor of the documents identified in the proposed order, attached

**Exhibit A**[4], and that the Court grant such other relief as is just and proper.

<u>BASIS FOR RELIEF</u>

22.     The information and documents sought by the Movant are appropriate

and are within the scope and purposes of FRBP 2004. FRBP 2004 provides, in

part:

> *(a)     Examination on Motion.* On motion of any party in interest, the court may order the examination of any entity.

> *(b)     Scope of Examination.* The examination of an entity under this rule or of the debtor under § 343 of the Code may relate only to the ***acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtors' right to a discharge*** . . . .

> *(c)     Compelling Attendance and Production of Documentary Evidence.* The attendance of an entity for examination and for the production of documents . . . may be compelled in the manner provided in Rule 9016 for the attendance of witnesses at a hearing or trial.

(emphasis added).

23.     A FRBP 2004 examination can be ordered "on motion of any party in

interest" and may "cut a broad swath through the debtor's affairs . . ." <u>In re Enron

Corp.</u>, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002; <u>In re Fearn</u>, 96 B.R. 135, 138

(Bankr. S.D. Ohio 1989), *quoting* <u>In re Mantolesky</u>, 14 B.R. 973, 976 (Bankr. D.

---

[4] The documents requested here are the exact same documents requested almost one year ago in connection with Movant's state court creditor's exam.

Mass. 1981). The Movant is a party-in-interest contemplated by section 1109(b) and FRBP 2004.

24.  Courts have recognized that the scope a FRBP 2004 examination is broad and have compared it to a "fishing expedition." In re Hammond, 140 B.R. 197, 201 (S.D. Ohio 1992); In re Russell, 392 B.R. 315, 359 (Bankr. E.D. Tenn. 2008) ("A Rule 2004 examination is a legally authorized fishing expedition.  It is not a deposition subject to all procedural rules governing discovery in a contested matter or adversary proceeding."); In re Savannah Yacht Corporation, 2004 Bankr. Lexis 2654, *7 (Bankr. S.D. Ga. March 24, 2004) ("[FRBP] 2004 examination are designed for the purposes of discovering assets and unearthing frauds and have been compared to a fishing expedition.").

25.  Because of Debtor's lengthy history of avoiding to provide even the most basic information to both this Court and Movant, a comprehensive document production and deposition is necessary.

26.  Thus, a subpoena for the discovery requested herein is appropriate pursuant to FRBP 2004.

**WHEREFORE,** the Movant respectfully requests entry of an order, substantially in the form attached hereto as **Exhibit A**, authorizing the Movant to take a FRBP 2004 examination of the Debtors and granting such other further relief as is just and proper.

Respectfully submitted,

SCHAFER AND WEINER, PLLC

/s / Howard M. Borin
HOWARD M. BORIN (P51959)
Attorney for GOF Finance-C, LLC
40950 Woodward Ave., Ste. 100
Bloomfield Hills, MI  48304
(248) 540-3340
hborin@schaferandweiner.com

Dated: August 6, 2026

# EXHIBIT  A

In re:                                                      Case No. 26-20982-dob

DAVID LEWI-EMMANUEL STOCKMAN              Chapter 11

              Debtor.                               Hon. Daniel S. Opperman

_____/

### ORDER GRANTING GOF FINANCE-C, LLC'S MOTION FOR AUTHORITY TO TAKE DEPOSITION OF DEBTOR AND REQUEST PRODUCTION OF DOCUMENTS PURSUANT TO FED. R. BANKR. P. 2004

This matter comes before the Court upon the GOF Finance-C, LLC's (the "Movant") *Motion for Authority to Take Deposition of Debtor and Request Production of Documents pursuant to Fed. R. Bankr. P. 2004* (the "Motion");  the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; this proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); venue of this proceeding and this Motion in this District are proper pursuant to 28 U.S.C. §§ 1408 and 1409; and notice of the Motion and the opportunity for a hearing on the Motion were appropriate under the circumstances and no other or further notice need be given; the Court having found good cause for the relief requested in the Motion; and the Court being otherwise duly advised in the premises;

**NOW, THEREFORE, IT IS HEREBY ORDERED** that:

The Motion is GRANTED;

The Movant is authorized to conduct a Fed. R. Bankr. P. 2004 examination of the Debtor:

    i.    Debtor shall produce documents identified on **Exhibit G** to the Motion, within fourteen (14) days of entry of this order, and

    ii.    Debtor shall provide the oral testimony pursuant to Fed. R. Bankr. P. 7030 in accordance with the Federal Rules of Bankruptcy Procedure and the Federal Rules of Civil Procedure on all matters that may be relevant to the Movant's investigation, within fourteen (14) days after the Movant has received the documents requested under section (a)(i) above;

Notwithstanding the possible applicability of Fed. R. Bankr. P. 7062, 9014, or otherwise, this Order shall be immediately effective and enforceable upon its entry.

This Court retains jurisdiction with respect to all matters arising from or related to the interpretation and implementation of this Order.

# EXHIBIT  B

ELECTRONICALLY FILED
COURT OF COMMON PLEAS
Tuesday, December 10, 2024 2:34:47 PM
CASE NUMBER: 2024 CV 06137 Docket ID: 852265111
Mike Foley
CLERK OF COURTS MONTGOMERY COUNTY OHIO

**IN THE COURT OF COMMON PLEAS
MONTGOMERY COUNTY, OHIO
CIVIL DIVISION**

| | | |
|---|---|---|
| **GOF FINANCE-C, LLC** | : | **CASE NO.:** _____ |
| | : | |
| **Plaintiff,** | : | **JUDGE:**_____ |
| **v.** | : | |
| | : | **JUDGMENT ENTRY AS TO:** |
| **BECKER-PRESSENTE, LLC, et al.** | : | |
| | : | 1. **BECKER-PRESSENTE, LLC; AND** |
| **Defendants.** | : | |
| | : | 2. **SAGINAW MTA DEVELOPMENT COMPANIES, LLC** |
| | : | |
| | : | 3. **MICHIGAN HEALTH CLINICS, P.C.** |
| | : | |
| | : | 4. **DAVID STOCKMAN** |

This matter is before the Court upon the Cognovit Note Complaint (the "Complaint") of Plaintiff GOF Finance-C, LLC ("Plaintiff"), and the Answer to Cognovit Note Complaint on behalf of Becker-Pressente, LLC ("Becker-Pressente"), Saginaw MTA Development Companies, LLC ("Saginaw MTA"), Michigan Health Clinics, P.C. ("Michigan Health"), as well as the Personal Guaranty (the "Guaranty"), executed by David Stockman ("Stockman")(collectively "Defendants"), on a warrant of attorney pursuant to R.C. 2323.13.

The Court finds that Defendants' attorney is duly licensed in the State of Ohio, and by virtue of the warrants of attorney contained in the Cognovit Balloon Promissory Note and Cognovit Guaranty in the original the principal amount of One Million Seven-Hundred Sixty-Four Dollars and 00/100 ($1,764,000.00) plus interest thereon, at the rate specified in the Cognovit Note, and Cognovit Guaranty which are attached as Exhibit "A", and Exhibit "B" respectively to the Plaintiff's Complaint and are incorporated herein by reference, having been duly executed by Defendants, said attorney did enter an appearance for and on behalf of the Defendants, waived the issuance of service of process in this action, and confessed judgment on the Cognovit Promissory Note and the Cognovit Guaranty in favor of the Plaintiff and against Defendants.

The Court further finds that it has personal jurisdiction over Defendants and jurisdiction over the subject matter herein, and that Defendant's attorney has waived all errors, rights of appeal, and stay of execution in this action.

16848455.1

26-20982-dob    Doc 129    Filed 08/06/26    Entered 08/06/26 11:48:33    Page 13 of 101

**IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Plaintiff GOF Finance-C, LLC is hereby granted judgment against the Defendants, Becker-Pressente, LLC, Saginaw MTA Development Companies, LLC, Michigan Health Clinics, P.C., as well as David Stockman, jointly and severally, as follows:**

1. In the principal amount of One Million Seven-Hundred Sixty-Four Dollars and 00/100 ($1,764,000.00), together with unpaid monthly interest installments in the amount of $295,600, plus late charges for the months of July 1, 2024 through November 1, 2024 in the amount of $500.00, plus servicing fees of $3,675, plus reasonable attorney fees, costs, and other sums as provided in the Cognovit Note, as of the 1st day of each month following November 1, 2024.  As well as Default interest at the rate of thirty-six (36) percent per annum, which shall continue to accrue until the loan is paid in full;

2. Any and all other charges as specifically set forth in the Cognovit Note, and which are associated with the collection of the Judgment, including those associated with the domestication of a Judgment in any foreign Jurisdiction, and specifically that GOF Finance-C, LLC shall be granted a supplemental award of reasonable attorney fees in the Court in which post-judgment collection proceedings have been undertaken, upon GOF Finance-C, LLC filing a Motion and Affidavit of Attorney fees with that Court.;  and

**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that Defendants shall each immediately be notified by the Clerk of Courts of the within Judgment by personal service or registered or certified mail at the address shown on the Complaint.

**IT IS SO ORDERED.**

_____
JUDGE

**NOTICE. This is a final appealable order.
The Clerk is directed to serve upon all parties notice
of this Judgment Entry and its date of entry upon the
journal in accordance with Civ.R. 5(B), in the manner
provided in Civ.R. 58(B).**

Prepared by:

/s/ Ryan F. Hemmerle
Ryan F. Hemmerle (0079721)
Strauss Troy Co., LPA
150 East Fourth Street, 4th Floor
Cincinnati, Ohio 45202-4018
Telephone No.:  (513) 621-2120
Facsimile No.:  (513) 241-8259
Email: rfhemmerle@strausstroy.com
*Attorney for Plaintiff, GOF Finance-C, LLC*

16848455.1



General Divison
Montgomery County Common Pleas Court
41 N. Perry Street, Dayton, Ohio 45422

**Case Number:**

2024 CV 06137

**Case Title:**

GOF FINANCE-C LLC vs BECKER-PRESSENTE LLC

**Type:**

Final Judgment Entry

So Ordered,

Electronically signed by jacksonang on 12/10/2024 02:34:57 PM Page 3 of 3

# EXHIBIT C

| STATE OF MICHIGAN | | AFFIDAVIT AND NOTICE OF ENTRY OF FOREIGN JUDGMENT | CASE NO. and JUDGE |
|---|---|---|---|
| 10th | JUDICIAL DISTRICT JUDICIAL CIRCUIT | | 25-000212-CZ |

| Court address | Court telephone no. |
|---|---|
| 111 S Michigan Ave, Saginaw, MI 48602 | (989) 790-5470 |

| Judgment creditor's name, address, and telephone no. | | Judgment debtor's name, address, and telephone no. |
|---|---|---|
| GOF FINANCE-C, LLC 120 W. 2nd Street, Ste. 1406 Dayton, Ohio 45402 | v | BECKER-PRESSENTE, LLC, et al. S77S McCarty Rd. Saginaw, MI 48603 |
| Judgment creditor's attorney, bar no., address, and telephone no. Brandi M. Blasses (P83872) SCHAFER & WEINER PLLC 40950 Woodward Ave., Ste. 100, Bloomfield Hills, MI 48304 | | Judgment debtor's attorney, bar no., address, and telephone no. |

CIRCUIT COURT RECORDS OFFICE
SAGINAW, MICHIGAN
FILED

FEB 04 2025

VANESSA GUERRA
SAGINAW COUNTY CLERK

**AFFIDAVIT**

I am the judgment creditor of the attached authenticated foreign judgment, which is being filed so that it may be enforced and satisfied in this state. The addresses above are the last-known addresses of the judgment creditor and the judgment debtor.

| Name of state where foreign judgment was issued | Name of court that issued foreign judgment | Case number | Amount of judgment* |
|---|---|---|---|
| Ohio | Ct of Common Pleas Montgomery Cty | 2024 CV 06137 | $1,768,175 |

| Date of judgment | |
|---|---|
| 12/10/24 | |

*The amount of judgment does not include interest.

Judgment creditor/Attorney signature

Subscribed and sworn to before me on 2/3/25
Date

My commission expires on Aug 16/2027

Deputy clerk/Notary public signature

Name (type or print) Estoban Lopez

Notary public, State of ~~Michigan~~ Ohio, County of Butler ___. ☐ Acting in the County of ___.
☐ This notarial act was performed using an electronic notarization system or a remote electronic notarization platform.

Approved, SCAO
Form MC 62, Rev. 3/08
MCL 691.1171 et seq.
Page 1 of 2

Distribute form to:
Court
Judgment debtor
Judgment creditor
Return

SRA



Esteban Lopez
Notary Public
State of Ohio
My Commission Expires
August 16, 2027

Case No. 25-000212-CZ

## NOTICE OF ENTRY

The authenticated foreign judgment is accepted for filing. Enforcement may begin 21 days after the date notice of the filing of the foreign judgment is mailed.

This document must be sealed
by the seal of the court.

Court clerk signature and date

## CERTIFICATE OF MAILING

I served a copy of this affidavit and notice on the parties or their attorneys by first-class mail addressed to their last-known addresses as defined by MCR 2.107(C)(3). I declare under the penalties of perjury that this certificate of mailing has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

_____
Date

_____
Signature

# IN THE COURT OF COMMON PLEAS
## MONTGOMERY COUNTY, OHIO
### CIVIL DIVISION

**GOF FINANCE-C, LLC**

        **Plaintiff,**

**v.**

**BECKER-PRESSENTE, LLC, et al.**

        **Defendants.**

:  **CASE NO.:** _____

:

:  **JUDGE:** _____

:

:  **JUDGMENT ENTRY AS TO:**

:

:    **1. BECKER-PRESSENTE, LLC; AND**

:

:    **2. SAGINAW MTA DEVELOPMENT COMPANIES, LLC**

:

:    **3. MICHIGAN HEALTH CLINICS, P.C.**

:

:    **4. DAVID STOCKMAN**

This matter is before the Court upon the Cognovit Note Complaint (the "Complaint") of Plaintiff GOF Finance-C, LLC ("Plaintiff"), and the Answer to Cognovit Note Complaint on behalf of Becker-Pressente, LLC ("Becker-Pressente"), Saginaw MTA Development Companies, LLC ("Saginaw MTA"), Michigan Health Clinics, P.C. ("Michigan Health"), as well as the Personal Guaranty (the "Guaranty"), executed by David Stockman ("Stockman")(collectively "Defendants"), on a warrant of attorney pursuant to R.C. 2323.13.

The Court finds that Defendants' attorney is duly licensed in the State of Ohio, and by virtue of the warrants of attorney contained in the Cognovit Balloon Promissory Note and Cognovit Guaranty in the original the principal amount of One Million Seven-Hundred Sixty-Four Dollars and 00/100 ($1,764,000.00) plus interest thereon, at the rate specified in the Cognovit Note, and Cognovit Guaranty which are attached as Exhibit "A", and Exhibit "B" respectively to the Plaintiff's Complaint and are incorporated herein by reference, having been duly executed by Defendants, said attorney did enter an appearance for and on behalf of the Defendants, waived the issuance of service of process in this action, and confessed judgment on the Cognovit Promissory Note and the Cognovit Guaranty in favor of the Plaintiff and against Defendants.

The Court further finds that it has personal jurisdiction over Defendants and jurisdiction over the subject matter herein, and that Defendant's attorney has waived all errors, rights of appeal, and stay of execution in this action.

16848455.1

IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that Plaintiff GOF Finance-C, LLC is hereby granted judgment against the Defendants, Becker-Pressente, LLC, Saginaw MTA Development Companies, LLC, Michigan Health Clinics, P.C., as well as David Stockman, jointly and severally, as follows:

1.       In the principal amount of One Million Seven-Hundred Sixty-Four Dollars and 00/100 ($1,764,000.00), together with unpaid monthly interest installments in the amount of $295,600, plus late charges for the months of July 1, 2024 through November 1, 2024 in the amount of $500.00, plus servicing fees of $3,675, plus reasonable attorney fees, costs, and other sums as provided in the Cognovit Note, as of the 1st day of each month following November 1, 2024. As well as Default interest at the rate of thirty-six (36) percent per annum, which shall continue to accrue until the loan is paid in full;

2.       Any and all other charges as specifically set forth in the Cognovit Note, and which are associated with the collection of the Judgment, including those associated with the domestication of a Judgment in any foreign jurisdiction, and specifically that GOF Finance-C, LLC shall be granted a supplemental award of reasonable attorney fees in the Court in which post-judgment collection proceedings have been undertaken, upon GOF Finance-C, LLC filing a Motion and Affidavit of Attorney fees with that Court.; and

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Defendants shall each immediately be notified by the Clerk of Courts of the within Judgment by personal service or registered or certified mail at the address shown on the Complaint.

IT IS SO ORDERED.

_____
JUDGE

NOTICE. This is a final appealable order.
The Clerk is directed to serve upon all parties notice
of this Judgment Entry and its date of entry upon the
journal in accordance with Civ.R. 5(B), in the manner
provided in Civ.R. 58(B).

Prepared by:

/s/ Ryan F. Hemmerle
Ryan F. Hemmerle (0079721)
Strauss Troy Co., LPA
150 East Fourth Street, 4th Floor
Cincinnati, Ohio 45202-4018
Telephone No.: (513) 621-2120
Facsimile No.: (513) 241-8259
Email: rhemmerle@strausstroy.com
Attorney for Plaintiff, GOF Finance-C, LLC

16848455.1



General Divison
Montgomery County Common Pleas Court
41 N. Perry Street, Dayton, Ohio 45422

**Case Number:**
2024 CV 06137

**Case Title:**
GOF FINANCE-C LLC vs BECKER-PRESSENTE LLC

**Type:**

Final Judgment Entry

So Ordered,

Electronically signed by jacksonang on 12/10/2024 02:34:57 PM Page 3 of 3

I hereby certify this to be a true and correct copy.
Witness my hand and seal this 3rd day of JANUARY 20 25

Clerk of Common Pleas
Court of Montgomery County, Ohio
By _____
Deputy

# EXHIBIT  D

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

IN RE:                                .    Case No. 25-20624-dob
                                      .    Chapter 11
BECKER-PRESSENTE, LLC,                .
                                      .
        Debtor.                       .
                                      .
. . . . . . . . . . . . . . . .

**TRANSCRIPT OF IN-PERSON AND MS TEAMS
AUDIO CONFERENCE HEARING ON ORDER TO
SHOW CAUSE AND U.S. TRUSTEE'S
MOTION TO DISMISS CASE**

BEFORE THE HONORABLE DANIEL S. OPPERMAN
CHIEF UNITED STATES BANKRUPTCY JUDGE

THURSDAY, MAY 22, 2025
BAY CITY, MICHIGAN

APPEARANCES:

| | |
|---|---|
| For the Debtor: | Becker-Pressente, LLC<br>By:  David Stockman, *pro se*<br>3871 Fortune Boulevard<br>Saginaw, MI  48603<br>(989) 341-5078 |
| For GOF-Finance-C, LLC: | Schafer & Weiner, PLLC<br>By:  Brandi M. Blasses*<br>40950 Woodward Avenue<br>Suite 100<br>Bloomfield Hills, MI  48304<br>(248) 540-3340 |
| For the United States<br>Trustee, Andrew R. Vara: | Office of the U.S. Trustee<br>By:  Kelley Callard<br>211 West Fort Street<br>Suite 700<br>Detroit, MI  48226<br>(313) 226-6773 |
| Subchapter V Trustee: | Allard & Fish, P.C.<br>By:  Deborah L. Fish*<br>211 West Fort Street<br>Suite 705<br>Detroit, MI  48226<br>(313) 309-3171 |
| For Frankenmuth Credit<br>Union: | Stancato Tragge Wells, PLLC<br>By:  John P. Tragge*<br>2111 Woodward Avenue<br>Suite 701<br>Detroit, MI  48201<br>(248) 731-4500 |
| Also Present: | Stephen Gaus (Observing)<br>J. Joseph Purtell (Observing) |
| Court Recorder: | Jennifer Hawkins<br>Clerk's Office<br>U.S. Bankruptcy Court<br>111 First Street<br>Bay City, MI  48708 |

Appearances continued:

Transcription Service:          Randel Raison
                                APLST, Inc.
                                6307 Amie Lane
                                Pearland, TX   77584
                                (713) 637-8864

*Appeared via MS Teams Audio Conference.

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

4

(Time Noted: 2:41 p.m.)

THE COURT CLERK: Becker-Pressente, LLC, bankruptcy case number 25-20624.

THE COURT: Yes, good afternoon. I'll take appearances of counsel. Let's start with the attorney for the United States Trustee.

MS. CALLARD: Good afternoon, Your Honor. Kelley Callard on behalf of the United States Trustee.

THE COURT: Good afternoon. Doctor Stockman, you're still Doctor Stockman, right?

DR. STOCKMAN: Yes, Your Honor.

THE COURT: Okay. You haven't changed yet?

DR. STOCKMAN: I have not.

THE COURT: Okay. Anybody else on the phone who wants to make an appearance? Ms. Fish, I think you're on the phone, as well as Ms. Blasses.

Let's have your appearances in that order, if you don't mind, please.

MS. FISH: Good afternoon, Your Honor. Deborah Fish, Subchapter V Trustee.

THE COURT: Good afternoon. And Ms. Blasses, you're on the phone?

MS. BLASSES: Good afternoon, Your Honor. Brandi Blasses on behalf of GOF Finance.

THE COURT: Good afternoon. Is there anybody else

on the phone who wants to make an appearance on the Becker-Pressente, LLC matter?

MR. TRAGGE: Yes, Your Honor. My name is John Tragge, and I'm the attorney for Frankenmuth Credit Union.

THE COURT: Good afternoon, Mr. Tragge. Anybody else who wants to make an appearance on the Becker-Pressente matter?

(No response)

THE COURT: Not hearing anyone. Let me inquire. Mr. Gaus, you really don't have an interest in this case, do you? Or just more than just a passing interest, I suppose?

MR. GAUS: A general interest in that when we begin collecting, we may pierce the corporate veil. I don't have anything more than that.

THE COURT: Okay. Two matters. One is an order to show cause that the Court entered, and the other is the motion to dismiss that's been filed by the United States Trustee.

I think I'm going to let you go first because I kind of know what the order to show cause says, but I'd like to hear what you have to say about the matter.

MS. CALLARD: Thank you, Your Honor. Your Honor, the background to this case is that Becker-Pressente, LLC previously filed a Chapter 11 case. That case was filed without an attorney. The Court entered an order to show

cause.

During that time, Your Honor, the U.S. Trustee had requested proof of insurance, along with other related documents, and did not receive any documents in that case and did not receive proof of insurance.

The Debtor -- or the U.S. Trustee did file a motion to dismiss that case and requested an expedited hearing. That hearing was actually set for today, yes today, but the case was dismissed on May 8th.

During the May 8th hearing, during discussions about obtaining an attorney and the other deficiencies in the case, and the issue raised by the creditor, GOF Financial, the Debtor admitted -- I'm sorry, Mr. Stockman, or Doctor Stockman, on behalf of the Debtor, admitted that of the four properties, he thought two were insured and two were not insured.

The Court dismissed the case, and indicated, you know, the Debtor should obtain counsel if it was going to file again.

The Debtor did file again, Your Honor, just one week after the case was dismissed, and on the eve of an adjourned foreclosure sale.

This case also was filed without an attorney, Your Honor.

The U.S. Trustee, on a very short time line, I

will admit, did request proof of insurance. That proof of insurance was requested Monday morning around 7:00 a.m. via email to Doctor Stockman, and asked that the proof of insurance be provided by noon. We did not receive proof of insurance, and believe still that based on the statements of Doctor Stockman at the May 8th hearing, that the Debtor is not insured.

Your Honor, this is the fourth time that Doctor Stockman has filed a case for a corporation without an attorney. Doctor Stockman was well aware of the obligation of the Debtor to be represented by an attorney. And based on the fact that this was filed on the eve of a foreclosure sale, appears to be an intent not to reorganize, but only to hinder and delay creditors.

Your Honor, the U.S. Trustee requests that this case be dismissed, and requests it be dismissed with a two-year bar to re-filing.

THE COURT: Thank you, Ms. Callard. I have a couple of questions.

MS. CALLARD: Sure.

THE COURT: I looked at 1112, because that's the basis of your motion. You've got cause under 1112.

MS. CALLARD: Yes, sir.

THE COURT: Where I struggle with it, is what's the right remedy? Because dismissal is one remedy, dismissal

with a bar is another remedy, or I could convert the case to Chapter 7. And it says "in the best interests of the creditors and the Estate."

I'm wondering: Is Chapter 7 a better way to go? Because what Doctor Stockman told us earlier in this case is there's a lot of equity in these properties. I don't know who the creditors are per se, but we know there's at least two, Frankenmuth Credit Union and GOF.

And it would be a whole lot easier for the Trustee just to handle these things because there's probably rents being collected.

I couldn't help but notice in the Michigan Institute of Forensic Science and Medicine that they did list the creditor as being this Debtor, $335,000.00. Where I come from, that's a fair amount of money.

So what's the better result? I mean, I think we've got the three, right? Dismissal, dismissal with a bar, or conversion to Chapter 7.

MS. CALLARD: Your Honor, in this case, you know, usually a motion to dismiss a Chapter 11 comes later down the road, when you have more information about the case and you have some idea about what's in the best interests of the creditors. You know if a case can be confirmed or not.

We don't have that information. We do have two creditors, and I'd be interested to hear what they have to

say.

The problem in this case and the reason that the U.S. Trustee for insurance purposes requests dismissal is because if this case gets converted, we now have a Chapter 7 Trustee that has Estate property that is not insured, and so they will have to immediately obtain insurance for this property, which might not be a very -- it might not be an automatic, you know, something that can happen within hours. I don't know how long that process takes, but that is -- I mean, we have uninsured assets, and that is a very big liability for the Estate.

And so if we give that liability -- I'm concerned if we give that liability to a Chapter 7 Trustee.

And so while there are potentially a lot of assets that could go to creditors in this case, we don't actually know that because we don't have documents. What we do know is that we don't have insurance.

THE COURT: Go ahead.

MS. CALLARD: And I was just going to say dismissal on its own doesn't appear to be a deterrent, because this case was previously dismissed and it was re-filed in the exact same form that it had been filed before.

So I think in this case the best instance is a dismissal with something more, in that case would be a bar.

THE COURT: I was wondering about that because,

you know, there's an automatic stay in place for 30 days in this case. This case gets dismissed, and you foresee another bankruptcy, there's no automatic stay whatsoever. The Debtor has got to come in and ask for an automatic stay, I think.

MS. CALLARD: So I was looking at that earlier, Your Honor, and I believe that's only true as to an individual. The stay only expires as to an individual, not a corporation. 362(c) discusses -- specifically says "individual."

I did not do any further research to determine if that extended beyond to a corporation.

THE COURT: You're just relying upon the Statute, Ms. Callard.

MS. CALLARD: Well, you'd think that would be enough, but it's not always true.

THE COURT: Right. How about the third option, dismissing the case with a bar, which you argue for two years.

MS. CALLARD: Uh-huh.

THE COURT: And you can fuss over whether it should be 180 days, two years, somewhere in between.

I was wondering because, as I heard the Doctor speak about this case a couple of weeks ago, I thought of all of his cases this seems to be the most straightforward of all of them, frankly.

MS. CALLARD: Uh-huh.

THE COURT: Because you've got finite assets, four properties, all located in Saginaw County. I think three of them generate income, which might solve part of your insurance issue. But point well made, you know, that doesn't turn into cash right away.

So where I'm going with this is what if you dismiss this case but have a bar that it can't be filed again for a period of time unless an attorney does it? Because that's what's really hurting everybody in these cases is that you don't have an attorney who is saying to someone "we need to do this, this, and this, and have your ducks in order before you file." That would perhaps solve a lot of issues. I don't know.

MS. CALLARD: I think that the Rule already has that bar in place.

THE COURT: Right, I know that. But, you know, --

MS. CALLARD: And that's not -- and Doctor Stockman hasn't been following that, and so something more than "just follow the Rule," which is "you have to have an attorney," needs to happen because that's already the Rule, that's already the bar, that's already the hurdle that a debtor has to overcome in these cases.

THE COURT: Right.

MS. CALLARD: And that's not happening.

THE COURT: That's because we have such a good natured Clerk. He accepts anything and everything, Ms. Callard. But if I put an order together that says "if a petition is filed either in this Court or anywhere else, it's got to be filed by an attorney," the Clerk's Office won't accept anything.

So I'm just trying to figure out what's the best interests of creditors here, because that's what 1112 requires that I do.

MS. CALLARD: I understand. My concern, Your Honor, is if the property burns down, we've got nothing for creditors anyway.

THE COURT: True.

MS. CALLARD: Or something else happens.

THE COURT: Right.

DR. STOCKMAN: Your Honor?

THE COURT: Just a second, Doctor. I think I'm through, but just when I think I am, I always have another question. Very well. Well, thank you, Ms. Callard.

Doctor, before I turn to you, Ms. Fish, do you have any thoughts on this?

MS. FISH: Yes, Your Honor. Deborah Fish, Subchapter V Trustee.

As the Court is aware, my role in these Subchapter V cases is to work with the Debtor and the creditors to

obtain a consensual Chapter 11 Plan.

It is difficult, as the Court is aware in this case, just because we don't know where we are.

So I, too, would be interested in hearing from the creditors. But if, in fact, there is substantial equity in these cases, you would think that it would be in the best interests of the creditors to either have a dismissal, like the Court indicated, where the Debtor would have to file only with an attorney, or in the event that the secured creditors in this case are covering this property, which sometimes secured creditors do, they obtain their own insurance when they find out that the Debtor is uninsured, and then they add that to the loan.

It is possible that the assets are insured, and then a Chapter 7 Trustee would not have to be burdened with immediate insurance.

And I do echo Ms. Callard's statement. That is, in fact, a true burden to a Chapter 7 Trustee, especially in a case like this where there are no Schedules. So a Chapter 7 Trustee could not even go to a source, which the Chapter 7 Trustee may have, and say "I'll make sure that you get paid, you make sure I get coverage immediately."

This Chapter 7 Trustee has no ability to do that without Schedules. So I think that may be a difficult course, although possibly ultimately in the best interests of

creditors. I just feel that that's difficult and a burden on the Chapter 7 Trustee in these particular facts.

I have nothing further unless the Court has any questions.

THE COURT: So you're inching more towards just dismissal with a bar, as opposed to converting to Chapter 7?

MS. FISH: That's correct, Your Honor.

THE COURT: Very good. Well, thank you. Ms. Blasses, I think probably it was your client's actions that prompted this second filing, so I'll want to hear from you next, please. So go ahead.

MS. BLASSES: Yes, Your Honor. Brandi Blasses on behalf of GOF Finance-C, LLC.

Your Honor, as this Court knows, this is the second Chapter 11 Petition filed *pro se* on behalf of the Debtor, Becker-Pressente, within a little over two weeks.

The first case was dismissed by this Court on May 8, 2025, with a clear ruling that the Debtor as an LLC cannot file for bankruptcy *pro se.*

The second Petition was nonetheless filed the day before my client's rescheduled foreclosure sale, again *pro se.*

By all appearances, Your Honor, this bankruptcy was knowingly filed for the purpose of disrupting our foreclosure sale.

These actions suggest that the pattern here is intended only to invoke the automatic stay, to delay my client's legitimate foreclosure proceedings and collection opportunities.

The Debtor could not have filed this case with an intent to reorganize, because at the time of filing, the Debtor knew that it could not proceed without an attorney. This is not new information. It's been told to this Debtor over and over and over again.

These repeated filings for the purpose of preventing its creditors from pursuing collection actions constitutes an abuse of the bankruptcy system, no matter how well-intended it was.

As a result of this filing, my client has incurred additional fees and costs in having to adjourn its foreclosure sale again, additional fees and costs in having me come to this hearing today to again explain why we're making the same show cause hearing that we had two weeks ago.

And I am concerned that even if this case is dismissed again, that this pattern is going to continue.

I did look into the issue that Ms. Callard raised earlier, and my understanding is that the provision that would prevent the automatic stay from going into effect does apply only to individual debtors.

So even if this Court were to dismiss this case

and enter an order prohibiting the Debtor from filing again, if for some reason this Debtor did file again, and that slips past the Clerk's Office, the automatic stay arguably would still go into effect and we would have to do this song and dance all over again.

So what I would ask for, Your Honor, is for not only the case to be dismissed with a bar from filing, but an additional order from this Court stating that if the Debtor does file another bankruptcy Petition while that bar is in effect, that the automatic stay will not go into effect at all.

I would also ask, to the extent that this Court is able to do so, to assess my client's fees and costs in having to redo its foreclosure sale and have me here today against Doctor Stockman personally, and allow us to ask for that to be considered an administrative expense in Doctor Stockman's personal bankruptcy case.

THE COURT: Thank you, Ms. Blasses. A question that came up earlier, does your client have force place insurance on these properties? There's four of them.

MS. BLASSES: When I last spoke to my client earlier this week, my client did not have insurance on the properties.

THE COURT: Fair enough. Now, I recall, and I don't recall the exact numbers, I'm sorry, Doctor, but the

Doctor made a pretty good statement in estimate of the value of these properties compared in particular to the amount that's owed to your client.

And I remember last time when you were on the phone in the hearing in this case, you didn't have a good idea of what the bidding instructions would be on the property. I know it's a little complicated because Frankenmuth Credit Union holds a first mortgage on one of the properties.

So where I'm going with this is wouldn't your client be better off if the case is dismissed with a bar, just tacking on those amounts to the amount that's being bid, because if the property is worth anywhere near what the Doctor says they're worth, that's a faster way of getting the money than having an administrative claim in a -- against an individual who -- and don't take this the wrong way, Doctor, who is in Chapter 11.

So I'm trying to balance that back and forth.

MS. BLASSES: Yes, Your Honor. I want to make sure I understand. Are you suggesting that my client take the fees and costs that we're asking to be assessed against Doctor Stockman and add it to our bid for the foreclosure sale?

THE COURT: Right. I mean, I think you would normally do that, wouldn't you, if your loan documents

require and allow it to happen?

MS. BLASSES: Sorry, Your Honor. I'm thinking this one through.

(Pause)

MS. BLASSES: Your Honor, I believe that could be done. I believe the concern is more so if we are in a situation where we bid on the properties and receive the properties in the foreclosure sale, and then turn around and sell the property.

If the equity is not what we are expecting it to be, then the claim that we have is more or less extinguished by the credit that it sells, regardless of how much money actually comes into my client's hands.

Just working it through in my head, I can see why it would be done that way. And I can also see why my client would have reservations about doing it that way.

THE COURT: But that's the risk that a secured creditor takes in any case.

MS. BLASSES: Yes, Your Honor.

THE COURT: You credit bid a certain amount, and if you can't peddle it later on after a foreclosure period, the redemption period expires. The creditor just over-estimated the value.

Mr. Purtell is here, and I think he's probably seen that happen from time to time. I have.

MR. PURTELL:  I have seen it happen from time to time, Your Honor.  It is a calculated risk a creditor has to take.

I would note, though, for the Court, just watching this, force place insurance doesn't cover equity.  It would only cover the secured creditor, but would not cover the equity.

THE COURT:  Right.  I realize that.  But, you know, if you worry about the best interests of creditors, let's talk about the creditors we do know, which are two creditors here.  It's an interesting dilemma that we have.

But thank you, Ms. Blasses.  Mr. Tragge, I put you off until last because you only have -- your client only has one interest -- an interest in only one property.  So go ahead and tell me what's on your mind, sir.

MR. TRAGGE:  Just a few comments, Judge.  With respect to the force placement of insurance, I know you'd be interested in knowing that.

Frankenmuth Credit Union, first off, has a mortgage on just one of the four properties, as you've noted.

THE COURT:  Right.

MR. TRAGGE:  That are in the Becker case.  And in that case, we did in fact force place insurance coverage for our collateral.  And that would be the Fashion Boulevard property.

We placed it some time ago, and the premium on it, it's my understanding, was in excess of $50,000.00. And that would be for a 12-month premium, which I believe expires here early this fall, either in September or October, is my best information.

I don't have the binder in front of me, Your Honor, so I can't speak to it in great detail, but two things to note is my projection of the premium is somewhere between $4,000.00 and $5,000.00 a month, I think about $4,500.00, $4,300.00, something like that, without having crunched the numbers specifically and knowing the exact premium.

And, again, as I think someone in the courtroom may have commented to you, I don't know who it was, I couldn't hear it clearly via the phone, but that protects and insures only to the extent of the credit union's interest in the property, which I believe our unpaid indebtedness is in the ballpark of $2.8 million dollars.

I don't know what the actual equity position is, if any, in this property. I know, you know, it's partially constructed, so there were at origination I'm sure talk of, you know, building it out to a greater extent than it actually is. And that construction never proceeded to the extent projected.

So on behalf of Frankenmuth, I can't tell you whether there's equity in this property over and above. I

think there may be, but I think an updated appraisal would probably be necessary.

I know you're wrestling with these issues. I might be providing you with additional detail that you don't really require, but, you know, in all candor, that's what the situation is with respect to our collateral.

I would also note that, you know, in addition to the first mortgage on that Fashion Boulevard -- Fortune Boulevard property, we also have exercised our assignment of rents at that property pre-Petition.

So, you know, I don't think there would be any rents flowing towards the Estate, so to the extent you're thinking about what would happen in the theoretical context of if a Chapter 7 Trustee were administering it, or if the bankruptcy was to continue, that would have to be taken into account.

Big picture, I don't believe the Becker-Pressente case belongs in a Chapter 11 proceeding. I think a dismissal is probably appropriate, although I understand why a conversion might be something you would consider, and we would defer to your judgment on which of those two potential remedies is appropriate.

And I do think in the event of a dismissal, a reasonable bar would be, I think, required here. I mean, this is a case of serial filings with knowledge that the

filings should not be made *in pro per.*

THE COURT: Thank you, Mr. Tragge. So you vote for dismissal with a bar, I suppose?

MR. TRAGGE: I think that would be an appropriate remedy. I think big picture, Your Honor, there is obviously a redemption period that would apply to any foreclosure proceeding. Frankenmuth is not in foreclosure with respect to its property at this point, but there would be a -- I believe a six-month redemption period, because this property could be deemed abandoned.

In terms of the attorney fee issue, I'll defer to other counsel's judgment. But if these are, in fact, foreclosure proceedings by advertisement, my reading of that Statute indicates that is antiquated as it is, and unfair to the legal profession as it is, that the attorney fee in a foreclosure by advertisement is limited to $75.00.

So to the extent you're wrestling with whether or not fees could be tacked on in some other context, I'm not sure they can. But I mention that just because the issue came up.

THE COURT: Thank you, Mr. Tragge. Thank you. Doctor Stockman, it's time to hear from you. So go ahead, please.

DR. STOCKMAN: Thank you, Your Honor. A couple of things.

Obviously if the filing was done to prevent the foreclosure, I did that obviously because I did not want to lose control of the Estate.

With regards to Mrs. Blasses' commentary, and again, thank you, Mr. Tragge, for the discussion regarding the fees regarding the foreclosure, the attorney fees regarding the foreclosure stuff, Ms. Campbell, who conducts the foreclosure event, said that neither this past week or the previous time was there any sort of documentation or anything sent over by the Great Oaks Finance people.

So there's a question. And that was the night before the auction was to take place.

So I question whether or not anything was actually done. That's neither here nor there.

Regarding the Estate itself, I don't have the ins and outs of what's necessary. I do realize obviously having a corporate counsel is important.

With regards to the insurances, the confusion regarding the last time was my own. My own personal insurance does cover the properties, because it is a LLC. And then the -- which I did not know previously.

And then the individual companies have insurance on the buildings, including our lessee, which is one of the properties which I don't have knowledge of. So that, I found that out in the past.

I ask not to dismiss the case purely because obviously I do intend to reorganize. There was no ill intent in any of these filings.

Obviously the complexities and inter-relatedness of everything makes everything complex, and it's not easy for any counsel to take on. It's not something that I have taken lightly in terms of doing on my own.

Again, I have confusion with regards to the process of going through the foreclosure process, which I don't want to go through. I'd rather reorganize and have the sale done appropriately through the bankruptcy Estate, if necessary, with our corporate counsel in place.

And, again, it's whether or not you decide to dismiss, I'll leave it up to your judgment in that regard. Obviously I don't want it to go to foreclosure. I believe that there is plenty of equity. I believe that will just make everything more complex with everything else.

THE COURT: What do you believe the values of these properties are? I mean, I'm looking at a list here. We've got 4798 Wenmar Drive in Saginaw.

DR. STOCKMAN: So last year we had an offer on 4798 for $650,000.00. It was initially agreed upon actually at $750,000.00, and we had a memorandum of understanding offer from the buyer for that larger amount, and then they pulled out at the last minute. It was not advertised since

then because obviously we did have a renter in place.

The property at Fortune -- sorry. The property at McCloud, which is where the forensic office is currently located, probably on the order of $2.5 million, I would say, just with all of the modifications that were done to the property, and just, you know, appraisal-wise, I don't know what -- if the modifications that were done would take hold.

But obviously there are interested parties in that property, and there's three now today.

And then the main property, which is our Fortune Boulevard address, you know, again, that's probably on the order of between $5-to-$7 million in terms of the appraisal value.

THE COURT: And Johnson, which is close to downtown, if I remember my geography of Saginaw correctly, it's in the so-called area where there might be the CMU Medical Campus some day, right, Doctor?

DR. STOCKMAN: Correct. I believe that's probably around $200,000.00-to-$250,000.00.

THE COURT: That could be speculative. I mean.

DR. STOCKMAN: Exactly.

THE COURT: CMU is not quite there yet, I'm told.

DR. STOCKMAN: Who knows.

THE COURT: Right. Mr. Tragge, how much is owed to Frankenmuth Credit Union, and on which property? I'm

sorry I forgot. So go ahead, please.

MR. TRAGGE: Our unpaid balance is in the neighborhood of $2.8 million dollars as to Becker-Pressente. Perhaps a little -- maybe a little more, but not significantly more than that. That's ballpark, Your Honor.

And that's secured at Fortune Boulevard with a first mortgage and an exercised assignment of rents. I think all of the tenants are actually Doctor Stockman owned entities, if I'm not mistaken.

THE COURT: Any part in any rent from that? Just kind of curious more than anything else.

MR. TRAGGE: No, not yet. I'm not sure that any of Doctor Stockman's entities are actually paying rent. It's not entirely clear to me yet. But, you know, these proceedings never really got off the ground, so we're not sure.

THE COURT: Sure. Ms. Blasses, how much is owed to GOF Finance, in ballpark number. I'm not going to hold you down to the penny, but give me a ballpark number.

MS. BLASSES: Your Honor, let me just check on that for you.

THE COURT: Sure.

MR. TRAGGE: Your Honor, if I could interject, I may be overlooking something significant. I think our indebtedness with Michigan Health Clinics, Inc. is cross-

collateralized with Becker, and I believe that indebtedness is in the ballpark of $1.6 million.

So, significantly, since we're doing the math to figure equity, I would be making a huge mistake in not mentioning the additional $1.6.

THE COURT: You just don't make mistakes, do you, Mr. Tragge?

MR. TRAGGE: I try not to.

THE COURT: So all together, your client is owed about $4.4 million, roughly?

MR. TRAGGE: I believe so, Your Honor.

THE COURT: So if you go to the low end of Fortune at $5 million, you're pretty much just dollar-for-dollar at the end of the day.

MR. TRAGGE: I hope there is equity over and above.

THE COURT: Mr. Tragge, all of the sudden either I'm losing my hearing abilities, or you're very faint. Go ahead and say that again.

(Pause)

THE COURT: I'm sorry, Mr. Tragge, would you repeat that? We didn't hear you. At least I didn't.

MR. TRAGGE: Oh, I'm sorry, Your Honor. I would be -- Frankenmuth would be -- if the Fortune Boulevard property turned out to be worth in excess of the aggregate

cross-collateralized debt that we owe -- or that's owed to us, rather.

I think one of the reasons why Great Oaks Funding is not foreclosing their second mortgage on the Fortune Boulevard property, and is instead focusing on the other three, is it's their assessment there is not equity over and above our mortgage.

THE COURT: Right. Plus they would take subject to your mortgage, or they would have the pleasure of paying you $4.4 million, right?

MR. TRAGGE: We would be happy to take their check, Your Honor.

THE COURT: So long as it cashes and clears.

MR. TRAGGE: Indeed.

THE COURT: Right. Ms. Blasses, have you got a better idea of how much is owed to your client now?

MS. BLASSES: Yes, Your Honor. I believe it's about $2.2 million, possibly, plus legal. I don't have a calculation for what the legal costs are.

THE COURT: Doctor Stockman looks a little surprised by that number, I think. Does that sound high to you, Doctor Stockman?

MS. DEGENARO: It's $1,785,000.00, interest only loan that was started about a year and 11 months ago, which you've already been paid about $500,000.00 on.

So I would say that your numbers are grossly incorrect.

THE COURT: Her numbers, not my numbers.

DR. STOCKMAN: Her numbers, Your Honor.

THE COURT: Fair enough. Well, that's what makes horse races, too, so there you go.

So you've got insurance on these properties, you think?

DR. STOCKMAN: The confusion was that it was not under the LLC exclusively. That's where I did not -- and, you know, I apologize. It was just many people handling different things. I did not know how it was set up, and I only realized after obviously that hearing and trying to figure stuff out.

THE COURT: Ms. Blasses, you have a foreclosure sale, I assume, probably not tomorrow, but the next Friday? Or what's your adjourn date?

MS. BLASSES: Your Honor, it's currently scheduled for tomorrow, with the understanding that we can always adjourn it another week if the Court doesn't dismiss today.

THE COURT: Okay. Give me a second.

(Pause)

THE COURT: Ms. Callard, as to your motion to dismiss, it seems to be a couple of major points:

Number 1, Debtor is not represented by an

attorney, for one.

Number 2, you have no idea whether there is insurance, or not. You've heard what the Doctor says, but that doesn't mean there's insurance. It just means that's what the Doctor thinks is insurance.

Is there another issue that we have here, too, that -- or are those the two major issues, you think?

MS. CALLARD: Well, and I think the third one, Your Honor, which was the basis of potentially your show cause and comments that Ms. Blasses made, that Doctor Stockman admitted that this wasn't -- he filed this with the intent to stop the foreclosure sale, despite knowing he should not have filed this case because he did not have an attorney.

THE COURT: Uh-huh.

MS. CALLARD: So despite what he says, everything he says after that, "but I want to reorganize," it doesn't matter. He filed without -- and he knows that he can't, so he filed without the intent to reorganize.

Your Honor, I have at this point little sympathy for Doctor Stockman in his indication that he does not know what's going on. He's been in active bankruptcy since April 4th with understanding that, you know, insurance is necessary and appropriate.

There's a long discussion on May 8th in both the

Michigan Health Clinics case and in this case about the necessity of insurance, both by me and Your Honor.

And so I think that we have established the cause for dismissal, and also cause for the bar.

As to the value of the property and this discussion of whether there's value for creditors, unfortunately with two cases filed, we have no documents that were filed. So nothing that would establish -- it's fine that Doctor Stockman thinks what the value of the property is, but again, we don't have any documents. Nothing is filed to establish that.

And, again, this case was filed on April 30th. The first case. The first Becker case was filed on April 30th.

So that's all I have on this.

As to GOF Financial's request for administrative expense fees in Doctor Stockman's personal case, I would object to that. There is a way to get administrative expense fees, and it's not kind of through this case to another case.

So if the creditor thinks that that's appropriate to file and seek administrative expense claims in that case, then I think it should do so in that case, not ask for you to tack them on in this case.

THE COURT: There is creditors in Doctor Stockman's case that might have a little bit different take

on it than GOF does.

MS. CALLARD: Yes, Your Honor.

THE COURT: Thank you, Ms. Callard.

(Pause)

THE COURT: The Court has two matters before it today on this matter.

The first matter is the Court's own order to show cause why this case should not be dismissed with the imposition of a bar. That order to show cause was filed on May 16, found at docket number 5, setting the hearing for today.

The second matter is on an expedited basis the United States Trustee's motion to dismiss this case.

The Court has heard arguments on both matters at the same time because they're essentially the same issues.

Let's go through some of the facts here first:

This Debtor is a limited liability company, and it has had two cases filed within the last few months. The first case was filed in this Court on April 30, 2025, case number 25-20546; again, filed without an attorney. And it was filed on the eve of a foreclosure sale by a creditor, GOF.

Clearly when the case was filed, the automatic stay prohibited the continuation of that foreclosure sale. GOF has elected to continue to enforce its rights by

adjourning that foreclosure sale is allowed by Michigan law.

The first case, the 20546 case, was dismissed on May 8, 2025, because the Debtor, being a corporation, was not represented by an attorney. And that violates both essentially Michigan law, as well as the Local Rule for this Court, 9010-1-A-1.

And then this case was filed on May 15, 2025, again on the eve of the scheduled foreclosure sale by GOF, again without an attorney.

While it perhaps had been stated or inferred in such, it was obviously to this Court's mind of some cases filed to stop the foreclosure sale of these four properties that the Debtor has, and to theoretically allow the Debtor to reorganize in this Court, as opposed to through foreclosure sale processes.

The United States Trustee's motion that has been filed seeks dismissal under 1112(b) for cause, and "cause" is identified in 1112(b)(4) to include the failure to maintain appropriate insurance that poses a risk to the Estate or to the public, as well as the failure to take certain things and file certain things as required by Statute or Local Rules.

And then sub-section (f) to pay fees or charges as required under Chapter 123 of Title XXVIII. That's the filing fee of the Section, in part. There's other fees that are included in that.

The real issue here, as the Court sees, is that the Debtor has again filed bankruptcy within essentially a few weeks of the first case being filed. And the Debtor has filed this case through its principal, Doctor Stockman, again without an attorney.

Doctor Stockman knew full well, as early as when the first case was dismissed on May 8th, that an attorney was needed. It shouldn't have been a surprise to him after May 8th. The Court would concede that perhaps it was a bit of a surprise before his other cases were filed. And when I say "his," his companies.

But by May 8th, it was well clear that he needed an attorney, and there is still not an attorney here.

1112 requires this Court to consider many factors:

One is, should the case be dismissed;

Should the case be converted;

And the key is: What's in the best interests of the creditors and the Estate?

The Court finds that there is cause here under sub-section (4), but then it wrestles with what's the best interests of the creditors.

Taking Doctor Stockman's statements that the four properties here, the Wenmar property being worth $650,000.00, the collateral being worth $2.5, Fortune between $5-to-$7 million -- I'm sorry, $2.5 million, Fortune between $5-to-$7

million, and Johnson at $200,000.00.

When one compares that, however, with the potential liability that is owed to Frankenmuth Credit Union, secured by the Fortune property, as well as cross-default and cross-collateralized with other properties or other debts that is owed to Frankenmuth Credit Union, that's $4.4 million, very close to the $5 million, which is a low number for Fortune.

And second, GOF, while Doctor Stockman may think the amount that's been stated by Ms. Blasses is too high, it's clear that that amount may very well require that the collateral be sold, too, just leaving the Wenmar property and the Johnson property.

And the Court has no idea who the other creditors are.

And then the issue of insurance. Doctor Stockman claims that there is insurance, and that would perhaps give creditors some peace of mind, but there's no way to really confirm that today.

And it goes back to the fundamental issue that the Court noted when it entered its own order to show cause earlier, and that is that the Debtor has not been represented by an attorney, both in this case and the previous case, and what should this Court do about it?

Ms. Callard indicates, and I think she's right,

that the Court Rule says that the Debtor has to have an attorney. This case was filed by Doctor Stockman with the clear knowledge that an attorney was necessary, and that is what prompts the Court to lean toward dismissal of this case with a bar, because what was clear on May 8th was not apparently either clear or followed about a week later, on May 15 when this case was filed again.

But all of that being said, the Court does also note that optimistically there may be equity in this property -- these properties for creditors. Those creditors have not been identified.

But the slim read of some equity for creditors doesn't convince the Court to go to the conversion route that's allowed under 1112 because, as I think Ms. Fish argued, a Chapter 7 Trustee would take this case and immediately try to get insurance on it, and doesn't have the funds to do it.

And so that puts everyone at risk even more so, and if there is insurance, the force place insurance by Frankenmuth Credit Union only covers its interests. And it looks like GOF doesn't have any insurance whatsoever, force place or otherwise.

So what the Court will do with this is -- I should also cite one other statute.

Section 109 of the Bankruptcy Code allows the

Court to impose a bar under certain circumstances. And here, the Court does see that those circumstances are in place because this case was filed not by an attorney, but by Doctor Stockman after he knew that there was a need for an attorney, and he went ahead and did it anyway.

Section 109 allows for the Court to impose a bar, as follows: And the Statute states -- I'm sorry, it's 349(a) states: "[U]nless the court for cause orders otherwise, the dismissal of a case under this title does not bar discharge in a related case under this title, or debts that were dischargeable in the case dismissed, nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition, except as provided under Section 109(g)."

Then you go to 109(g), which allows that the Court may impose a bar of 180 days if a case was dismissed for the willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case.

Here, the Debtor clearly knew -- or Doctor Stockman, that the case needed to be filed with an attorney. It was not filed with an attorney.

So when you add 109 and 349 together, the Court is convinced that a bar should be put in place for 180 days.

The Court would, however, note that the reason

that bar is in place is because there's no attorney. So the Court will also condition the bar for 180 days upon if the Debtor hires an attorney and has that attorney file the petition and the papers in appropriate form, the Debtor may do so. They will not be barred from doing that, but until the Debtor has an attorney and until that attorney files the appropriate papers, the Debtor is barred for 180 days from filing a case.

And this case is dismissed.

There's one last thing: Ms. Blasses, on behalf of her client, has asked for a surcharge or an administrative claim against Doctor Stockman individually. Doctor Stockman is currently in Chapter 11. The Court is convinced that that's not an appropriate request because creditors of Doctor Stockman may want to weigh in on this, and there's a method for Ms. Blasses to obtain that relief in his case, as opposed to going through this case.

So the Court will deny that request by GOF.

And I think I've covered the waterfront.

Ms. Callard, is there something I've missed that you think I should cover? It's your motion, in part. I want to make sure I've got it clear.

MS. CALLARD: No, Your Honor. I think you've covered it all.

THE COURT: Ms. Fish, anything more from you on

this case?

MS. FISH:  Nothing further.  Thank you, Your Honor.

THE COURT:  You're welcome.  Mr. Tragge, anything more for you?

MR. TRAGGE:  No, Your Honor.  Thank you.

THE COURT:  Ms. Blasses, how about you?  Anything more?

MS. BLASSES:  Nothing more, Your Honor.  Thank you.

THE COURT:  Very well.  Doctor, what I'll do in the next couple of days, I'll enter an order that makes it clear what can and can't be done.  But the case is dismissed today, so that you know that.

And just because of the time of day and everything, I know I can't get the order done, unless Ms. Callard wants to take on the order?

MS. CALLARD:  I know I won't get it done today, either.  I can get it prepared tonight and get it submitted tomorrow, if you'd like me to do that, but I don't know if you want other parties to sign off on it.

THE COURT:  Let me ask.  Mr. Tragge, do you want to look at the order that Ms. Callard might draft?

MR. TRAGGE:  I'd be happy to look at it.  I similarly probably can't turn it around yet today.

THE COURT: No, I'm not asking you to, because she can't do that.

Ms. Blasses, would you like to look at the order, or would you waive presentment of it?

MS. BLASSES: I can waive that, Your Honor.

THE COURT: I'm sorry, you would waive presentment?

MS. BLASSES: Yes, Your Honor.

THE COURT: Okay. I just wanted to make it clear. Ms. Fish, how about you?

MS. FISH: I don't need to see the order, Your Honor. Thank you. I would waive presentment.

THE COURT: Presentment is waived.

MR. TRAGGE: For ease, Your Honor, I would waive presentment, as well. I'm confident Ms. Callard will submit what Your Honor ruled.

THE COURT: Very good. Ms. Callard, we'll waive presentment. Doctor, I'll look at the order carefully, because it's a unique type of order. So there might be some nuance that I didn't articulate, or Ms. Callard didn't catch, likely I didn't articulate versus you didn't catch it, Ms. Callard. But we'll get it taken care of that way.

So you ought to submit that order tomorrow, and I'll sign it then.

MS. CALLARD: Sure. And I just want to clarify.

41

The case is dismissed, it's dismissed with 180 day bar unless the Debtor files with an attorney.

THE COURT: Right.

MS. CALLARD: And that is on my order or on the Court's show cause, or both?

THE COURT: Let's put it on both.

MS. CALLARD: Okay.

THE COURT: That way we've got it wrapped up tightly.

MS. CALLARD: Okay.

THE COURT: Okay.

DR. STOCKMAN: Your Honor?

THE COURT: Hang on for a second. I want to make sure she's set.

MS. CALLARD: Yes. Thank you.

THE COURT: Sorry, Doctor. It's just that, you know, I sometimes lose track of things if I don't stay on my track. Go ahead. Anything more, Doctor?

DR. STOCKMAN: One question, and a possible request. And I don't know if it can be granted in this short amount of time.

But given the status of all of the creditors and their secured interests in both my companies and obviously myself, with the cross-collateralization of myself and the properties and the companies, again, I actually would ask for

Ms. Callard and Ms. Fish to potentially weigh in, given Mr. Gaus' colorful commentary today and quoting of the media, and like I mentioned, there's more articles about me due to Mr. Gaus and their collaborators than probably anybody, I would ask potentially for a protective order regarding everything at least within this courtroom.

Again, the equity in the property -- sorry, in large part, the equity is me, and, you know, Mr. Gaus has come here and obviously cited media articles which he helped collaborate on and write, and obviously with the intent to prejudice the Court today.

So I would ask for a protective order.

THE COURT: Very well. Thank you, Doctor. First off, to make it very clear, whatever Mr. Gaus said about things, for lack of a better word, it's just not relevant. Sorry, Mr. Gaus.

I just had a finite thing. I wish I could come up with a good medical term, you know, and maybe it's someone comes in, they've got a hang nail, but they tell you all about the problem with their feet.

DR. STOCKMAN: I'd refer to it as herpetic in this.

THE COURT: Okay. Whatever that perhaps means. But, you know, sometimes you have to listen to people, and then it's like "no, I'm treating this problem here, the rest

of the stuff is" -- and Mr. Gaus has a limited immunity because as an attorney he can address the Court. I think he's probably fit within that immunity.

I can't close the record on this because it's a public record.

DR. STOCKMAN: Sure.

THE COURT: So that's the best I can do. All I can tell you is that whatever Mr. Gaus said today doesn't really -- it had no impact on what I did.

DR. STOCKMAN: Oh, I know that, Your Honor.

THE COURT: These are very technical issues.

DR. STOCKMAN: I understand.

THE COURT: Mr. Gaus did a nice job of detailing what he thinks is the case, but it's not what's before me today.

DR. STOCKMAN: Sure.

THE COURT: So I think you'll be fine, Doctor. Just work hard, get an attorney, and you'll probably be okay, because I disagree with some of the attorneys. I thought the Becker case was the easiest one of all of them, frankly. Four properties, two creditors, essentially, maybe some other unsecured creditors. But let's see what happens.

Ms. Callard, anything more for you today?

MS. CALLARD: Yes, Your Honor. I'm sorry. I'm just -- on Doctor Stockman's individual case, that was

adjourned. Is that adjourned to in-person on the 5th, or is that going to be a phone?

THE COURT: What would you like to do? We can do this by phone if you want to. I mean, it saves you a trip up here, if that's what you want to do.

MS. CALLARD: Either way is fine with me, Your Honor. I just was looking at the order, and I wanted to confirm with you.

THE COURT: What would you like to do, Doctor, in-person or by phone?

DR. STOCKMAN: I'm sure I'm much farther away than Ms. Callard, so I would let her decide whatever she wanted.

THE COURT: Let's do it by phone.

MS. CALLARD: Okay. Thank you very much.

THE COURT: You're welcome. Is that it, Ms. Callard? That was an easy one. I thought you were going to come up with something tough.

MS. CALLARD: That's it.

THE COURT: Okay.

MS. CALLARD: Thank you.

THE COURT: Ms. Fish, anything more for you today?

MS. FISH: Nothing further. Thank you, Your Honor.

THE COURT: Thank you. Ms. Blasses, anything more for you?

MS. BLASSES: Not at this time, Your Honor. Thank you.

THE COURT: Thank you. And Mr. Tragge?

MR. TRAGGE: No, Your Honor. Thank you.

THE COURT: Very good. Well, that will conclude the Becker-Pressente, LLC matter. Everyone have a great weekend. Memorial Day and all of that, to remember those people who died for our country and for our freedom, on Monday in particular, if not every day.

(Time Noted: 3:42 p.m.)

* * * * *

CERTIFICATE

I, RANDEL RAISON, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, to the best of my ability.

_____          January 14, 2026

Randel Raison

# EXHIBIT  E

| STATE OF MICHIGAN | | SUBPOENA | CASE NUMBER and JUDGE |
|---|---|---|---|
| JUDICIAL DISTRICT | | Order to Appear and/or Produce | 25-000212-CZ |
| 10th JUDICIAL CIRCUIT COUNTY | | | |

Court address 111 S. Michigan Ave., Saginaw, MI 48602

Police Report Number (if applicable):

Court telephone number (989) 790 -5470

| Plaintiff(s)/Petitioner(s) | | Defendant(s)/Respondent(s) |
|---|---|---|
| ☐ People of the State of Michigan<br>☑ GOF Finance, LLC | | Becker-Pressente, LLC, et. al.<br>5775 McCarty Rd.<br>Saginaw, MI 48603 |
| ☑ Civil          ☐ Criminal | v | Charge |

In the matter of _____

In the Name of the People of the State of Michigan. TO:

David Stockman

5775 McCarty Rd.

Saginaw, MI 48603

If you require accommodations to use the court because of a disability, or if you require a foreign language interpreter to help you fully participate in court proceedings, please contact the court immediately to make arrangements.

## YOU ARE ORDERED TO:

☑ 1. Appear personally at the time and place stated below: You may be required to appear from time to time and day to day until excused.

| ☐ The court address above | ☑ Other: Schafer and Weiner, PLLC, 40950 Woodward Ave., Suite 100, Bloomfield Hills, MI 48304 | |
|---|---|---|
| Day Friday | Date October 17, 2025 | Time 10:00 a.m. |

☐ 2. Testify at trial / examination / hearing.

☑ 3. ☑ Produce copies* of the following items: (Use additional pages if necessary.) See attached Exhibit 1 _____

*Note: Requesting party must pay reasonable copying costs, which cannot be waived under MCR 2.002.

☐ Permit inspection or copying of the following items: (Use additional pages if necessary.) _____

☑ 4. Testify as to your assets, and bring with you the items listed in line 3 above.

☐ 5. Testify at deposition.      ☐ The deposition will be visually recorded.

☑ 6. Abide by the attached prohibition against transferring or disposing of property. (MCL 600.6104(2), 600.6116, or 600.6119.)

☑ 7. Other: Submit to a Creditors Examination _____

Approved, SCAO
Form MC 11, Rev. 10/24
MCL 600.1455, MCL 600.1701, MCL 600.6104, MCL 600.6110, MCL 600.6116,
MCL 600.6119, MCR 2.002, MCR 2.105, MCR 2.305, MCR 2.315(C)(1),
MCR 2.506
Page 1 of 2

Distribute form to:
Return
Witness
File
Plaintiff(s)/Petitioner(s)

Defendant(s)/Respondent(s)

SRA

☑ 8.

| Person requesting subpoena Joseph K. Grekin (P52165) | | Telephone number 248-540-3340 |
|---|---|---|
| Address 40950 Woodward Ave., Suite 100 | | |
| City Bloomfield Hills | State MI | Zip 48304 |



NOTE: If requesting a debtor's examination under MCL 600.6110, or an injunction under item 6, this subpoena must be issued by a judge. For a debtor examination, the affidavit of debtor examination below must also be completed. Debtor's assets can also be discovered through MCR 2.305 without the need for an affidavit of debtor examination or issuance of this subpoena by a judge.

**FAILURE TO OBEY THE COMMANDS OF THE SUBPOENA OR TO APPEAR AT THE STATED TIME AND PLACE MAY SUBJECT YOU TO PENALTY FOR CONTEMPT OF COURT.**

| Court use only |
|---|
| ☐ Served     ☐ Not served |

‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
Judge/Clerk/Attorney signature and date

---

### AFFIDAVIT FOR JUDGMENT DEBTOR EXAMINATION

I request that the court issue a subpoena that orders the party named on this form to be examined under oath before a judge concerning the money or property of Becker-Pressents, LLC, Saginaw MTA Development Companies, LLC, Michigan Health Clinics, P.C. and David Stockman

for the following reasons: Collection of Judgment

_Signature_

Subscribed and sworn to before me on 9/2/25
Date

My commission expires on 8/5/28 .

Deputy clerk/Notary public signature _Kimberly K. Peickert_

Name (type or print) Kimberly K. Peickert

Notary public, State of Michigan, County of Oakland . ☐ Acting in the County of_____ .
☐ This notarial act was performed using an electronic notarization system or a remote electronic notarization platform.

KIMBERLY K. PEICKERT
NOTARY PUBLIC, STATE OF MI
COUNTY OF OAKLAND
MY COMMISSION EXPIRES Aug 5, 2028
ACTING IN COUNTY OF Oakland

## PROOF OF SERVICE

**TO PROCESS SERVER:** You must serve the subpoena and file proof of service with the court clerk. If you are unable to complete service, you must return this original and all copies to the court clerk.

### CERTIFICATE OF SERVICE / NONSERVICE

☐ I served    ☐ personally    ☐ by registered or certified mail, return receipt requested, and delivery restricted to the addressee (copy of return receipt attached)    a copy of the subpoena, together with any required fees and the attachments listed below, on:

☐ I have attempted to serve a copy of the subpoena, together with any required fees and the attachments listed below, and have been unable to complete service on:

| Name | Date and time of service |
|---|---|
| Place or address of service | |
| Attachments (if any) | |

I declare under the penalties of perjury that this certificate of service has been examined by me and that its contents are true to the best of my information, knowledge, and belief.

| Service fee $ | Miles traveled | Fee $ | | Signature |
|---|---|---|---|---|
| Incorrect address fee $ | Miles traveled | Fee $ | TOTAL FEE $ | Name (type or print) |

### ACKNOWLEDGMENT OF SERVICE

I acknowledge that I have received service of a copy of the subpoena, together with any required fees and

_____ on _____ .
Attachments (if any)                              Date and time

_____ on behalf of _____
Signature

_____
Name (type or print)

MCR 2.105, MCR 2.107, MCR 2.305(A), MCR 2.506(G)

<u>**EXHIBIT 1 TO SUBPOENA FOR JUDGMENT DEBTOR DAVID STOCKMAN**</u>

The judgment debtor, David Stockman, is instructed to produce the documents listed herein. References to these documents shall include any records or assets in the name of David Stockman, or any other name by which David Stockman has previously or is currently known ("<u>Debtor</u>") and/or any entity, or any entity's assets, that Debtor has or had an interest in.

As used in this subpoena, "Document(s)" shall have its customary broad meaning and shall include, without limitation, the following items, whether original or copies:

> All written, printed, typed, photostat, photographed, or otherwise recorded matter of any kind, including the originals and all non-identical copies thereof, whether different from the originals by reason of any notation made on such copies or otherwise, and including, without limitation, minutes, agenda, contracts, agreements, reports, analyses, summaries, inter-office and intra-office Communications or memoranda, letters, envelopes, messages; financial or accounting statements, working papers, compilations, reports or summaries; reports or summaries of investigations, trade letters, press releases, magazines, newspapers, brochures, posterboard, offers, notations of any sort of conversations, diaries, appointment books or calendars, teletypes, telefax, thermafax, confirmations, and all drafts, alterations, modifications, changes, markups and amendments of any of the foregoing, and all graphic or manual records or representations of any kind, including without limitation photographs, charts, graphs, microfiche, microfilm, videotape, records, and motion pictures, and electronic, mechanical or electric records or representations of any kind, including without limitation tapes, cassettes, magnetic, optical or other discs, magnetic cards and recordings.

The term "Documents" shall also include all "Electronically Stored Information." Electronically Stored Information includes, but is not limited to, email, writings, drawing, graphs, charts, photographs, sound recordings, text messages, Facebook or other social media posts, and other data or data compilations stored in any electronic medium from which information may be obtained. All electronically stored information must be produced in reasonably usable form or in the form in which it is usually maintained.

{01125207.1}

1. Bank/Business Records

   a. Any and all documents and records of checking, saving, or any other type account, foreign or domestic, maintained by the Debtor with any type of financial institution during the past five years, including but not limited to monthly account statements, checks, check registers, general ledgers, check stubs, cancelled checks, and deposit slips.

   b. All documents that refer to, relate to, reflect or concern any transfers made by any third party to or from any financial account held by or for the benefit of the Debtor during the last five years.

   c. Any and all signature cards submitted to any bank or other financial institution that name the Debtor as a signatory on any financial account, for any entity or for any other third party, during the past five years.

   d. Any and all documents submitted by the Debtor to any bank or financial institution, or to any other person or entity for any loan or advance, in any capacity (i.e. borrower, guarantor, or surety) during the past five years.

   e. Any and all documents concerning any interest in, or claimed title to, any certificates of deposit, letters of credit, money orders, cashier's checks, traveler's checks, bank deposits, or escrow funds owned or held by the Debtor during the past five years.

   f. Any and all documents related to any account in which the Debtor's earnings, income, or other monies have been deposited into during the past five years, whether or not the Debtor continued to have an interest in it.

{01125207.1}

g. Any and all documents evidencing the Debtor having authority to access any safe deposit box or other bank-secured area during the past five years.

h. Any and all documents evidencing any application to open a foreign or offshore financial account signed by the Debtor or on behalf of the Debtor, any of Debtor's affiliates or subsidiaries or related entities, or the Debtor's relatives (including the Debtor's wife and/or children).

i. Copies of IRA contracts and statements for all IRAs in which the Debtor has or had an interest during the last five years.

j. Copies of any IRAs or 401Ks that were "rolled over".

k. Complete contribution and distribution records for any IRAs or 401Ks in which you held an interest during the past five years.

l. Copies of any loans taken against the Debtor's IRAs or 401Ks.

m. The Debtor's income tax returns for the past five years.

n. With regards to any businesses the Debtor has or had an interest in during the past five years:

    i. Any and all loan agreements in effect during the past five years.

    ii. Company or corporate minute books made during the past five years.

    iii. Uniform commercial code filings.

    iv. Detailed summary of accounts receivable for the past five years.

    v. Verified inventory statements.

    vi. Bank account statements during the past five years.

    vii. Any and all accounts receivable records during the past five years.

    viii. Financial statements during the past five years.

ix. Any and all tax returns dated during the past five years.

2. Real Property

a. Any and all documents that refer to, reflect or relate to any real property owned by the Debtor during the past five years.

b. Any and all documents that refer to, reflect, or relate to encumbrances on any real property owned by the Debtor.

c. Any and all documents evidencing ownership of real property in which the Debtor currently enjoys any beneficial interest.

d. Any and all checks, receipts, deeds or other evidence of the sale or transfer of any real property in which the Debtor had a legal or equitable ownership interest, during the past five years.

e. Any and all lease agreements for real property in which the Debtor is the landlord, or in which the Debtor has any interest.

f. Any and all lease agreements for real property in which the Debtor is the lessor or lessee.

g. Any and all documents that evidence the Debtor's name being on any real property tax records, as payor or trustee, during the past five years.

h. Any and all deeds that title any real property to the Debtor as trustee for any other person or entity.

i. Any or all deeds of trust or mortgages held in favor of the Debtor at present or owned during the last five years.

j. Any and all documents evidencing any time-shares that the Debtor uses.

{01125207.1}

k. Copies of any appraisals or other forms of valuation for any property that the Debtor has an interest in or had an interest in during the past five years.

l. Promissory notes or mortgages that the Debtor signed during the past five years.

3. <u>Personal Property</u>

a. Certificates of title or other evidence of ownership of any boat, automobile, truck, watercraft, motorcycle, four-wheeler, recreational vehicle, go-kart, aircraft, agricultural equipment, or construction equipment owned by or in possession of the Debtor, whether owned by the Debtor or entity that the Debtor is affiliated with or held in trust by the Debtor.

b. Any and all note receivables, pledges or security interests made in favor of the Debtor during the past five years.

c. Copies of all insurance policies or riders that have insured any property that the Debtor owns, or has an interest in, during the past five years.

d. List of household furnishings and fixtures that have been purchased for use in the Debtor's residence during the last year that had a purchase price of $999 or more.

e. Any and all documents that refer to or reflect any livestock owned by the Debtor during the past five years.

f. List and valuation of all collectibles (i.e. stamps, coins, sports cards, etc.) that the Debtor owned during the past five years.

g. Any and all documents that refer to or relate to any guns, jewelry, antiques, art, paintings or other similar assets that Debtor owned during the past five years.

h. A complete and detailed list of all religious or costume jewelry owned by the Debtor during the past five years.

{01125207.1}

i. A complete and detailed list of all watches owned by the Debtor during the past five years, including make, model, and serial numbers for each watch.

j. A complete and detailed list of any and all domain names, websites, Facebook pages, Twitter accounts, or any other social media accounts held or used by the Debtor, as well as all login and password information for each account.

k. Any and all documents evidencing any interest the Debtor may have in any patents, trademarks, copyrights, franchises, royalties of any kind, oil and gas rights, timber rights, or mineral rights.

4. Business Interests/Employment

a. All documents that identify the name and addresses of any person or entity that has employed the Debtor during the past five years.

b. All documents that identify any person or entity that the Debtor has acted as an independent contractor for during the past five years.

c. All documents referring in any way to any and all businesses in which the Debtor is a stockholder, partner, officer, director, member, owner, or registered agent.

d. All documents that identify the name and contact information of any person or entity that has done business of any kind with any business entity owned by the Debtor during the past five years.

e. All documents referring, relating or pertaining to any records of salaries, commissions, bonuses, income from employment, wages, pay stubs, dividends, royalties, allowances, expenses or other sums of money paid to the Debtor during the past five years.

f.  Any and all employment contracts to which the Debtor has been a party during the past five years.

5. <u>Investments</u>

a.  Any and all documents and records of stocks, bonds, mutual funds, debentures, certificates of deposit or any other investment vehicle owned or held for the benefit of the Debtor.

b.  Any and all rent rolls for all properties in which the Debtor has had an ownership interest during the past five years.

c.  All copies of 1099-D's or 1099-I's issued to the Debtor during the past five years.

d.  Any and all documents referring to any stock options or profit-sharing plans held by the Debtor or for the benefit of the Debtor.

e.  Any and all documents that evidence a cash value in any life insurance policy of the Debtor and copies of all policies whether term, whole life or universal.

6. <u>General</u>

a.  All documents evidencing any trusts or amendments to trusts in which the Debtor is a grantor, settlor, trustee or beneficiary.

b.  All documents evidencing any and all trusts or amendments to trusts to which the Debtor has contributed any assets to during the past five years.

c.  Copies of all pre and post nuptial agreements, to include the list of assets and liabilities to be held separate.

d.  Copies of all separate property agreements, to include the list of assets and liabilities to be held separate.

{01125207.1}

e. Copies of any Wills, including all amendments, in which the Debtor is or was named as a beneficiary.

f. Copies of all passports for travel outside of the United States.

g. Copies of any and all credit card statements, for all cards for which the Debtor is an authorized user, during the past five years.

h. All documents referring or reflecting the name and address of any storage facility or mini-warehouse to which the Debtor has access.

i. Copies of any and all financial statements that the Debtor has prepared for any lender or creditor during the past five years.

j. Copies of any and all professional licenses that the Debtor has.

k. Copies of all the Debtor's driver's licenses.

l. Copies of all divorce decrees involving the Debtor and any affidavits submitted in those proceedings.

m. Any transcripts of the Debtor's deposition testimony in any case during the past five years.

n. Any personal financial statements you provided to anyone during the past five years.

o. Any proof of ownership of any amount of Bitcoin or any other cryptocurrency.

p. Any proof of ownership of any Non-Fungible Tokens ("**NFTs**") or similar assets.

q. Any amount of cash located in a mobile payment service account such as Venmo or CashApp, or any other peer-to-peer transaction facilitation service.

# MICHIGAN LEGISLATURE

## Michigan Compiled Laws Complete Through PA 12 of 2025

Senate adjourned until Wednesday, September 3, 2025 10:00 AM
House adjourned until Wednesday, September 3, 2025 1:30 PM

Home    Legislature    Laws    More        Sign Up    Log In

# MCL - Section 600.6104
Download Section

Chapter 600
Act 236 of 1961
236-1961-61
◀ Previous Section     Next Section ▶

**REVISED JUDICATURE ACT OF 1961 (EXCERPT)**
**Act 236 of 1961**

**600.6104 Powers of judge after rendition of judgment for money.**

Sec. 6104.

After judgment for money has been rendered in an action in any court of this state, the judge may, on motion in that action or in a subsequent proceeding:

(1) Compel a discovery of any property or things in action belonging to a judgment debtor, and of any property, money, or things in action due to him, or held in trust for him;

(2) Prevent the transfer of any property, money, or things in action, or the payment or delivery thereof to the judgment debtor;

(3) Order the satisfaction of the judgment out of property, money, or other things in action, liquidated or unliquidated, not exempt from execution;

(4) Appoint a receiver of any property the judgment debtor has or may thereafter acquire; and

(5) Make any order as within his discretion seems appropriate in regard to carrying out the full intent and purpose of these provisions to subject any nonexempt assets of any judgment debtor to the satisfaction of any judgment against the judgment debtor.

The court may permit the proceedings under this chapter to be taken although execution may not issue and other proceedings may not be taken for the enforcement of the judgment. It is not necessary that execution be returned unsatisfied before proceedings under this chapter are commenced.

**History:** 1961, Act 236, Eff. Jan. 1, 1963 ;-- Am. 1974, Act 297, Eff. Apr. 1, 1975

26-20982-dob    Doc 129    Filed 08/06/26    Entered 08/06/26 11:48:33    Page 80 of 101

Acceptable Use Policy    Privacy Policy    DMCA Policy    Comment Form
Legislative Directory    Accessibility    Site Map

Bills    Meetings    Laws

The Michigan Legislature Website is a free service of the Legislative Service Bureau in cooperation with the Michigan Legislative Council, the Michigan House of Representatives, the Michigan Senate, and the Library of Michigan. This site is intended to provide accurate and timely legislative information to the citizens of the State of Michigan and other interested parties. Additional historical documents can be found at https://www.michigan.gov/libraryofmichigan. The information obtained from this site is not intended to replace official versions of that information and is subject to revision. The Legislature presents this information, without warranties, express or implied, regarding the accuracy of the information, timeliness, or completeness. If you believe the information is inaccurate, out-of-date, or incomplete or if you have problems accessing or reading the information, please send your concerns to the appropriate agency using the online Comment Form in the bar above this text.

# MICHIGAN LEGISLATURE

## Michigan Compiled Laws Complete Through PA 12 of 2025

Senate adjourned until Wednesday, September 3, 2025 10:00 AM
House adjourned until Wednesday, September 3, 2025 1:30 PM

Home   Legislature   Laws   More       Sign Up   Log In

# MCL - Section 600.6116

Download Section

Chapter 600
Act 236 of 1961
236-1961-61
◀ Previous Section    Next Section ▶

**REVISED JUDICATURE ACT OF 1961 (EXCERPT)**
**Act 236 of 1961**

**600.6116 Transfer of debtor's property; duration of restraint.**

Sec. 6116.

(1) An order for examination of a judgment debtor may contain a provision restraining the judgment debtor from making or suffering any transfer or other disposition of, or interference with any of his property then held or thereafter acquired **by** or becoming due to him not exempt by law from application to the satisfaction of the judgment, until further direction in the premises, and such other provisions as the court may deem proper.

(2) Unless previously vacated by order of the court or by stipulation of the parties in writing, a restraining provision as herein provided shall remain in full force and effect for a period of 2 years from the date thereof, at which time it shall be deemed vacated for all purposes unless extended by order of the court for good cause shown.

**History:** 1961, Act 236, Eff. Jan. 1, 1963

Acceptable Use Policy   Privacy Policy   DMCA Policy   Comment Form
Legislative Directory   Accessibility   Site Map

🔊 Bills   🔊 Meetings   🔊 Laws

The Michigan Legislature Website is a free service of the Legislative Service Bureau in cooperation with the Michigan Legislative Council, the Michigan House of

26-20982-dob   Doc 129   Filed 08/06/26   Entered 08/06/26 11:48:33   Page 82 of 101

Representatives, the Michigan Senate, and the Library of Michigan. This site is intended to provide accurate and timely legislative information to the citizens of the State of Michigan and other interested parties. Additional historical documents can be found at https://www.michigan.gov/libraryofmichigan. The information obtained from this site is not intended to replace official versions of that information and is subject to revision. The Legislature presents this information, without warranties, express or implied, regarding the accuracy of the information, timeliness, or completeness. If you believe the information is inaccurate, out-of-date, or incomplete or if you have problems accessing or reading the information, please send your concerns to the appropriate agency using the online Comment Form in the bar above this text.

**600.6119 Transfer of property by third party; prohibition; violation; contempt; liability; transfer of property apparently belonging to others; duration of restraint.**

Sec. 6119.

(1) When a third party having in his or its possession property or moneys belonging to the judgment debtor or who is indebted to the judgment debtor is subpoenaed or ordered to attend and be examined as authorized in this chapter, such third party is hereby forbidden to make or suffer any transfer or other disposition of, or to interfere with, any property belonging to the judgment debtor or to which he may be entitled or which may thereafter be acquired by or become due to said judgment debtor, or to pay over or otherwise dispose of any moneys due or to become due to such judgment debtor, not exempt by law from application to the satisfaction of the judgment, until the further order of the court except that such third party is not obliged to withhold the payment of any moneys beyond double the amount claimed in such subpoena by the judgment creditor. To effect such restraining provision, a copy of this section must be indorsed on or attached to the copy of the subpoena or order served on the third party.

(2) Any person served with said subpoena or order, who violates the provisions of such restraining provision, is subject to punishment by the court for contempt, and is liable to the judgment creditor for any damages sustained.

(3) The restraining effect of a subpoena served upon a third party shall not, however, apply to any property, money or indebtedness which appears from the books or records of the third party to belong to or to be due to a person or corporation other than the judgment debtor, unless the third party has knowledge or reason to believe that such property, money or indebtedness belongs to or is due to the judgment debtor; but the court may by order at any stage of the proceeding grant a restraining provision applicable to any such property, money or indebtedness, which is specified in the order, where it is shown to the court's satisfaction by affidavit or other written proof that there is reason to believe that such property, money or indebtedness belongs to or is due to the judgment debtor.

(4) Unless previously vacated by order of the court or unless released in writing filed in the cause by the judgment creditor, a restraining provision as herein provided shall remain in full force and effect for a period of 2 years from the date of the service of the subpoena, at which time it is deemed vacated for all purposes unless extended by order of the court for good cause shown.

History: 1961, Act 236, Eff. Jan. 1, 1963

# EXHIBIT  F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GOF-FINANCE-C, LLC,

                Plaintiff,                    Case Number 25-13749
                                                  Honorable David M. Lawson

v.

BECKER-PRESSENTE, LLC, and
DAVID STOCKMAN,

                Defendants.

_____/

## OPINION AND ORDER GRANTING IN PART MOTION TO REMAND

Plaintiff GOF Finance-C, LLC ("GOF") commenced an action on February 4, 2025 in the Saginaw County, Michigan circuit court against defendants David Stockman and Becker-Pressente, LLC to collect a foreign judgment it had domesticated. Eventually, Stockman was served with a subpoena on September 12, 2025 to appear for a creditor's examination. Defendant Becker-Pressente filed a notice to remove the case to this Court on November 24, 2025, the day a contempt motion was to be heard in state court for Stockman's failure to respond to the subpoena, alleging rights under the Bankruptcy Code. GOF moved to remand the case to state court within 30 days of the removal, arguing, among other things, that the removal was untimely. The defendants have not responded to the motion. The removal notice was not filed within the time allowed by 28 U.S.C. § 1446(b)(1), and GOF filed its remand motion within 30 days of the notice. The motion to remand will be granted. However, because GOF also asked for an award of fees under 28 U.S.C. § 1447(c) but has not furnished documentation supporting an amount, the Court will delay remanding the case to allow GOF to supplement the record.

## I.

GOF obtained a judgment of more than $1.7 million against Becker-Pressente, LLC, Saginaw MTA Development Companies, LLC, Michigan Health Clinics, P.C., and their owner, David Stockman, in the Court of Common Pleas for Montgomery County, Ohio, on December 10, 2024.  ECF No. 4-2, PageID.26-27.  The judgment was later domesticated in a Michigan state court on February 4, 2025.  ECF No. 4-3, PageID.29-30.

After domesticating the judgment, GOF initiated foreclosure proceedings against four properties owned by Becker-Pressente, LLC.  The foreclosure sales were initially scheduled for May 2, 2025.  ECF No. 4, PageID.7.  However, two days before those sales were to occur, David Stockman filed a Chapter 11 bankruptcy petition on behalf of Becker-Pressente, LLC.  *See* ECF No. 4-4, PageID.35.  Becker-Pressente was not represented by counsel, so the United States Trustee promptly moved to dismiss the bankruptcy proceeding, indicating both that corporations may not proceed in bankruptcy court without an attorney and that the debtor had failed to comply with basic filing obligations, including providing proof of insurance.  *Id.* at PageID.35-37.  The bankruptcy court dismissed the case on May 8, 2025.  ECF No. 4-5, PageID.42.

GOF thereafter rescheduled the foreclosure sales for May 16, 2025.  ECF No. 4, PageID.7.  On May 15, 2025 — the day before the rescheduled sales — Stockman filed another Chapter 11 petition on behalf of Becker-Pressente without counsel and despite the bankruptcy court's earlier admonition.  *See* ECF No. 4-6, PageID.44.  The United States Trustee again moved to dismiss the proceeding, describing the filing as a repeat violation of the court's rules and asserting that the debtor appeared interested only in delaying creditors rather than reorganizing its affairs.  *Id.* at PageID.44-46.  At a hearing held on May 22, 2025, the bankruptcy court dismissed the second bankruptcy case and entered an order of dismissal the next day.  *In re Becker-Pressente, LLC*, Case

- 2 -

No. 25-bk-20624, ECF Nos. 20, 21 (E.D. Mich. Bnkr.).  The foreclosure sales proceeded on May 23, 2025.  ECF No. 4-9, PageID.64-69.

Several months later, GOF sought to conduct a creditor's examination of Stockman in the Saginaw County Circuit Court.  The court issued a subpoena on September 5, 2025 directing Stockman to appear and produce documents on October 17, 2025.  ECF No. 4-12, PageID.91-92.  GOF served Stockman with that subpoena on September 12, 2025.  *Id.* at PageID.93.  Stockman neither appeared nor produced documents.  ECF No. 4-14 at PageID.102-03.  GOF then moved to compel compliance and requested that the state court hold Stockman in contempt and issue a bench warrant should he continue to refuse compliance.  ECF No. 4-15.  The state court scheduled a hearing on that motion for November 24, 2025.  ECF No. 4-16, PageID.174.

On the day of the hearing, Becker-Pressente filed a notice removing the action to federal court.  The notice asserted that the foreclosure sales conducted on May 23, 2025 were void because the automatic stay from the second bankruptcy case allegedly remained in effect at the time of the sales.  ECF No. 1, PageID.1-2.

GOF moved to remand the case to state court on December 17, 2025, arguing that the removal was (1) untimely and (2) procedurally defective because it was not signed by an attorney on behalf of Becker-Pressente.  GOF also seeks attorneys' fees and costs necessitated by the removal in the amount of $3,718, arguing that the defendants' removal was objectively unreasonable.  The defendants did not respond to the motion to remand.

II.

Title 28, section 1441(a) of the United States Code permits defendants in civil actions to remove cases originally filed in state courts to federal district courts where the district court would have had original jurisdiction.  *Nessel ex rel People of Michigan v. Enbridge Energy*, LP, 104 F.4th

- 3 -

958, 965 (6th Cir. 2024). A party seeking to remove a case to federal court "bears the burden of establishing" that removal is proper. *Her Majesty the Queen In Right of the Province of Ontario v. City of Detroit*, 874 F.2d 332, 339 (6th Cir. 1989).

A removing defendant also must comply with the procedural requirements found in 28 U.S.C. § 1446. One of those requirements is that the "notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt" of the "initial pleading" in that action, "or within 30 days after the service of summons upon the defendant[,] . . . whichever period is shorter." *Enbridge Energy, LP v. Nessel on behalf of Michigan*, --- U.S. ---, --, 146 S. Ct. 1074, 1079-80 (2026) (quoting 28 U.S.C. § 1446(b)).

The defendants' November 24, 2025 notice of removal missed the 30-day deadline by quite a bit. The bankruptcy court granted the Trustee's motion to dismiss the second bankruptcy proceeding at a May 22, 2025 hearing and entered a written dismissal order the following day. Even if the May 23, 2025 foreclosure sales violated the automatic stay and supplied a basis for removal of the state case, the 30-day clock began no later than May 23, 2025, when the bankruptcy court entered its dismissal order. *See Easley v. Pettibone Michigan Corp.*, 990 F.2d 905, 909 (6th Cir. 1993) ("[T]he debtor must file its petition for removal within 30 days after the termination of the stay."). Yet defendants waited until November 24, 2025 — months after that deadline had expired.

In its remand motion, GOF suggests a more generous construction of events, fixing the commencement of the removal period from September 12, 2025 with the service of the creditor's examination subpoena, when, perhaps, the case first appeared removable. "[W]hen a case at first appears unremovable, but a later 'pleading, motion, order or other paper' reveals that it is (or has become) removable . . ., the defendant has another 30 days to remove from 'receipt' of the paper

- 4 -

'from which it may first be ascertained that the case is . . . removable.'" *Enbridge Energy*, 146 S. Ct. at 1083 (quoting 28 U.S.C. § 1446(b)(3)).  But that exception applies only when removal is based on diversity of citizenship.  *Ibid.*  And even then, the defendants did not file their notice of removal until more than seventy days later.

The 30-day removal deadline is not jurisdictional, *id.* at 1981, and a party seeking to challenge a tardy removal must do so within 30 days, *id.* at 1080.  But when a timely challenge is brought, the Court must treat the deadline "as mandatory," *id.* at 1082, and enforce it, *Hamer v. Neighborhood Hous. Servs. of Chicago*, 583 U.S. 17, 20 (2017) ("If properly invoked, mandatory claim-processing rules must be enforced.").

III.

GOF has asked the Court to award attorney's fees and costs for having to challenge this improvident removal.  Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  The Court has discretion to make such an award "where the removing party lacked an objectively reasonable basis for seeking removal."  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).

That standard does not require a showing that the defendants' "position was 'frivolous' or entirely 'without foundation.'"  *Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.*, 512 F. App'x 485, 489 (6th Cir. 2013) (quoting *Martin*, 546 U.S. at 138-39)).  Rather, objective reasonableness "depend[s] on the clarity of the law at the time the notice of removal was filed."  *Ibid.*  Moreover, "[t]he Supreme Court has held that the 'appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants

a right to remove as a general matter, when the statutory criteria are satisfied.'" *Powers v. Cottrell, Inc.*, 728 F.3d 509, 515 (6th Cir. 2013) (quoting *Martin*, 546 U.S. at 140).  Therefore, "[b]ad-faith motivation to remove for the purpose of prolonging litigation and imposing costs on the opposing party indisputably . . . justif[ies] the award of fees under § 1447(c)."  *A Forever Recovery, Inc. v. Twp. of Pennfield*, 606 F. App'x 279, 284 (6th Cir. 2015).

The record here leaves little doubt that the removal lacked an objectively reasonable basis. As explained above, the notice of removal was filed weeks and months after the statutory deadline had expired, and only on the very day the defendants were required to appear for a hearing in state court to explain their disregard of a creditor's examination subpoena, which could have resulted in a contempt finding.  And it appears that Stockman has employed this tactic on behalf of himself and his companies to avoid hearings and state-court judgments in several other cases.  *See, e.g.*, *Sensus Healthcare, Inc. v. Michigan Health Clinics, P.C.*, No. 25-13515, 2026 WL 1283762 (E.D. Mich. May 8, 2026); *Bush v. Stockman, et al.*, Case No. 25-11865 (E.D. Mich.); *Laboratory Corp. of America, Inc. v. Michigan Health Clinics, P.C.*, Case No. 26-11208 (E.D. Mich.); *Northstar Scientific Solutions*, *LLC v. Michigan Health Clinics, PC*, Case No. 26-11209 (E.D. Mich.); *Wildfire Credit Union v. Stockman, et al.*, Case No. 25-13537 (E.D. Mich.); *Bush v. Stockman, et al.*, Case No. 25-12659 (E.D. Mich.); *Bush v. Stockman, et al.*, Case No. 25-13417 (E.D. Mich.); *Neogenomics Laboratories, Inc. v. Stockman, et al.*, Case No. 25-14038 (E.D. Mich.).  The timing of the present removal, together with Stockman's demonstrated pattern of invoking removal to evade state-court authority, convincingly establishes that the removal served not to vindicate a legitimate federal right, but to delay proceedings and impose additional costs on the opposing party.  An award of fees and costs is warranted.  *A Forever Recovery*, 606 F. App'x at 284.

The amount of an award, however, must represent "just costs and . . . actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). GOF has requested $3,718, a modest sum, but it still must substantiate the request, and it has not submitted documentation for those amounts. The Court must satisfy itself that the requested amount is reasonable, which generally calls for an examination of counsel's billing records and expense documentation. *See Crown v. PHI Air Med., LLC*, No. 15-CV-10180, 2015 WL 3409010, at *3 (E.D. Mich. May 27, 2015). The Court will not order remand at this time but will retain jurisdiction to adjudicate the fee request.

IV.

The defendants' notice of removal was not filed within the 30-day deadline stated in 28 U.S.C. § 1446. The defendants' filing of this untimely notice of removal was objectively unreasonable and filed in bad faith.

Accordingly, it is **ORDERED** that the plaintiff's motion for remand (ECF No. 4) is **GRANTED IN PART**.

It is further **ORDERED** that the case will not be remanded to state court until the attorney's fee and expense request is adjudicated.

It is further **ORDERED** that the plaintiff must submit proof substantiating its request for attorney's fees and expenses **on or before June 9, 2026**.

s/David M. Lawson<br>
DAVID M. LAWSON<br>
United States District Judge

Dated:   May 26, 2026

# EXHIBIT  G

## EXHIBIT G

## PRODUCTION OF DOCUMENTS

1. <u>Bank/Business Records</u>

   a.  Any and all documents and records of checking, saving, or any other type account, foreign or domestic, maintained by the Debtor with any type of financial institution during the past five years, including but not limited to monthly account statements, checks, check registers, general ledgers, check stubs, cancelled checks, and deposit slips.

   b.  All documents that refer to, relate to, reflect or concern any transfers made by any third party to or from any financial account held by or for the benefit of the Debtor during the last five years.

   c.  Any and all signature cards submitted to any bank or other financial institution that name the Debtor as a signatory on any financial account, for any entity or for any other third party, during the past five years.

   d.  Any and all documents submitted by the Debtor to any bank or financial institution, or to any other person or entity for any loan or advance, in any capacity (i.e. borrower, guarantor, or surety) during the past five years.

   e.  Any and all documents concerning any interest in, or claimed title to, any certificates of deposit, letters of credit, money orders, cashier's checks, traveler's checks, bank deposits, or escrow funds owned or held by the Debtor during the past five years.

   f.  Any and all documents related to any account in which the Debtor's earnings, income, or other monies have been deposited into during

the past five years, whether or not the Debtor continued to have an interest in it.

g.  Any and all documents evidencing the Debtor having authority to access any safe deposit box or other bank-secured area during the past five years.

h.  Any and all documents evidencing any application to open a foreign or offshore financial account signed by the Debtor or on behalf of the Debtor, any of Debtor's affiliates or subsidiaries or related entities, or the Debtor's relatives (including the Debtor's wife and/or children).

i.  Copies of IRA contracts and statements for all IRAs in which the Debtor has or had an interest during the last five years.

j.  Copies of any IRAs or 401Ks that were "rolled over".

k.  Complete contribution and distribution records for any IRAs or 401Ks in which you held an interest during the past five years.

l.  Copies of any loans taken against the Debtor's IRAs or 401Ks.

m.  The Debtor's income tax returns for the past five years.

n.  With regards to any businesses the Debtor has or had an interest in during the past five years:

   i.  Any and all loan agreements in effect during the past five years.

   ii.  Company or corporate minute books made during the past five years.

   iii.  Uniform commercial code filings.

iv.    Detailed summary of accounts receivable for the past five years.

v.    Verified inventory statements.

vi.    Bank account statements during the past five years.

vii.    Any and all accounts receivable records during the past five years.

viii.    Financial statements during the past five years.

ix.    Any and all tax returns dated during the past five years.

2. <u>Real Property</u>

a.    Any and all documents that refer to, reflect or relate to any real property owned by the Debtor during the past five years.

b.    Any and all documents that refer to, reflect, or relate to encumbrances on any real property owned by the Debtor.

c.    Any and all documents evidencing ownership of real property in which the Debtor currently enjoys any beneficial interest.

d.    Any and all checks, receipts, deeds or other evidence of the sale or transfer of any real property in which the Debtor had a legal or equitable ownership interest, during the past five years.

e.    Any and all lease agreements for real property in which the Debtor is the landlord, or in which the Debtor has any interest.

f.    Any and all lease agreements for real property in which the Debtor is the lessor or lessee.

g. Any and all documents that evidence the Debtor's name being on any real property tax records, as payor or trustee, during the past five years.

h. Any and all deeds that title any real property to the Debtor as trustee for any other person or entity.

i. Any or all deeds of trust or mortgages held in favor of the Debtor at present or owned during the last five years.

j. Any and all documents evidencing any time-shares that the Debtor uses.

k. Copies of any appraisals or other forms of valuation for any property that the Debtor has an interest in or had an interest in during the past five years.

l. Promissory notes or mortgages that the Debtor signed during the past five years.

3. Personal Property

a. Certificates of title or other evidence of ownership of any boat, automobile, truck, watercraft, motorcycle, four-wheeler, recreational vehicle, go-kart, aircraft, agricultural equipment, or construction equipment owned by or in possession of the Debtor, whether owned by the Debtor or entity that the Debtor is affiliated with or held in trust by the Debtor.

b. Any and all note receivables, pledges or security interests made in favor of the Debtor during the past five years.

c. Copies of all insurance policies or riders that have insured any property that the Debtor owns, or has an interest in, during the past five years.

d. List of household furnishings and fixtures that have been purchased for use in the Debtor's residence during the last year that had a purchase price of $999 or more.

e. Any and all documents that refer to or reflect any livestock owned by the Debtor during the past five years.

f. List and valuation of all collectibles (i.e. stamps, coins, sports cards, etc.) that the Debtor owned during the past five years.

g. Any and all documents that refer to or relate to any guns, jewelry, antiques, art, paintings or other similar assets that Debtor owned during the past five years.

h. A complete and detailed list of all religious or costume jewelry owned by the Debtor during the past five years.

i. A complete and detailed list of all watches owned by the Debtor during the past five years, including make, model, and serial numbers for each watch.

j. A complete and detailed list of any and all domain names, websites, Facebook pages, Twitter accounts, or any other social media accounts held or used by the Debtor, as well as all login and password information for each account.

k. Any and all documents evidencing any interest the Debtor may have in any patents, trademarks, copyrights, franchises, royalties of any kind, oil and gas rights, timber rights, or mineral rights.

4.  <u>Business Interests/Employment</u>

    a.    All documents that identify the name and addresses of any person or entity that has employed the Debtor during the past five years.

    b.    All documents that identify any person or entity that the Debtor has acted as an independent contractor for during the past five years.

    c.    All documents referring in any way to any and all businesses in which the Debtor is a stockholder, partner, officer, director, member, owner, or registered agent.

    d.    All documents that identify the name and contact information of any person or entity that has done business of any kind with any business entity owned by the Debtor during the past five years.

    e.    All documents referring, relating or pertaining to any records of salaries, commissions, bonuses, income from employment, wages, pay stubs, dividends, royalties, allowances, expenses or other sums of money paid to the Debtor during the past five years.

    f.    Any and all employment contracts to which the Debtor has been a party during the past five years.

5.  <u>Investments</u>

    a.    Any and all documents and records of stocks, bonds, mutual funds, debentures, certificates of deposit or any other investment vehicle owned or held for the benefit of the Debtor.

    b.    Any and all rent rolls for all properties in which the Debtor has had an ownership interest during the past five years.

    c.    All copies of 1099-D's or 1099-I's issued to the Debtor during the past five years.

d. Any and all documents referring to any stock options or profit-sharing plans held by the Debtor or for the benefit of the Debtor.

e. Any and all documents that evidence a cash value in any life insurance policy of the Debtor and copies of all policies whether term, whole life or universal.

6. <u>General</u>

a. All documents evidencing any trusts or amendments to trusts in which the Debtor is a grantor, settlor, trustee or beneficiary.

b. All documents evidencing any and all trusts or amendments to trusts to which the Debtor has contributed any assets to during the past five years.

c. Copies of all pre and post nuptial agreements, to include the list of assets and liabilities to be held separate.

d. Copies of all separate property agreements, to include the list of assets and liabilities to be held separate.

e. Copies of any Wills, including all amendments, in which the Debtor is or was named as a beneficiary.

f. Copies of all passports for travel outside of the United States.

g. Copies of any and all credit card statements, for all cards for which the Debtor is an authorized user, during the past five years.

h. All documents referring or reflecting the name and address of any storage facility or mini-warehouse to which the Debtor has access.

i.      Copies of any and all financial statements that the Debtor has prepared for any lender or creditor during the past five years.

j.      Copies of any and all professional licenses that the Debtor has.

k.      Copies of all the Debtor's driver's licenses.

l.      Copies of all divorce decrees involving the Debtor and any affidavits

m.      submitted in those proceedings.

n.      Any transcripts of the Debtor's deposition testimony in any case during the past five years.

o.      Any personal financial statements you provided to anyone during the past five years.

p.      Any proof of ownership of any amount of Bitcoin or any other cryptocurrency.

q.      Any proof of ownership of any Non-Fungible Tokens ("**NFTs**") or similar assets.

r.      Any amount of cash located in a mobile payment service account such as Venmo or CashApp, or any other peer-to-peer transaction facilitation service.