# UNITED STATES BANKRUPTCY COURT

## EASTERN DISTRICT OF MICHIGAN -- NORTHERN DIVISION

In re:                                              Case No. 26-20982-dob

DAVID LEWI-EMMANUEL STOCKMAN          Chapter 11

Debtor.                                             Hon. Daniel S. Opperman

_____/

## RESPONSE TO MOTION TO SHOW CAUSE

Now comes Stephan Gaus, personally and on behalf of Garske, Hewitt & Rodenbo, as well as on behalf of Russell Bush, M.D., and in response to the Debtor's Emergency Motion for Order to Show Cause, states as follows:

As is demonstrated by the attached Spreadsheet, Ex A, all of the "actions" alleged to have been taken by the Respondents were in fact necessary Court filings related to *post-petition* actions taken by David Stockman in other pending legal matters, unrelated to the bankruptcy.

As the Court knows from matters the undersigned filed with this Court, the Debtor was found to be a "Vexatious Litigant" by Judge Gershwin Drain on June 17 in the Third Removal case he filed. All of the

1

Removals were summarily remanded to the Circuit Court, each without any response from Stockman to the Motion to Remand.)

In the Order naming him a Vexatious Litigant, Stockman was specifically told by the Court he could not file another Removal in that Court without prior written permission of that Court.

Stockman filed for this bankruptcy 9 days after being named Vexatious. However, he did not advise the State Circuit Court that he had done so until the Hearing on Entry of the Judgment in that case, held at 3:30 pm on July 6th.

At that hearing Judge Jurrens declined to allow Stockman to appear remotely, and mandated that he come to the Courthouse to actually provide the Court with documentation regarding the Bankruptcy.

This July 6, 2026 hearing was perhaps the 6th time Stockman had acted in this manner, waiting until the moment of Hearing to obtain and show the Court that a Stay was in place due to one of his 10 or so bankruptcies and 4 Removals to Federal Court.

Dr. Stockman's scheme is now transparent – do *anything* that any Court Rule allows to momentarily delay the Circuit Court from entering an order or judgment; and to use the Courts to create unnecessary, unfounded

2

and frivolous or vexatious litigation so as to delay and harass the rightful creditors.

None of Stockman's many prior bankruptcies or Removals have moved forward on to "completion." Each was merely a device for delay and then was essentially abandoned after filing. His use of Artificial Intelligence as his lawyer is apparent, even obvious. It needs to be stopped, and Judge Drain tried to do so.

As Judge Opperman noted at the recent hearing in this matter, the language of Judge Drain's Vexatious Order is plain, and virtually incapable of misinterpretation. -- Except, that is, by David Stockman, who just 14 days after being ordered not to file a further Removal, VEXATIOUSLY DID SO - AGAIN. So it is not that surprising that he could not answer Judge Opperman's question to him about that very language on July 23 in open Court.

And by filing that Fourth Removal and then two appeals – acts taken by Stockman after the filing date of the bankruptcy - Stockman creates the dilemma:

What is his opponent supposed to do in those cases?

Ignore them due to a prior bankruptcy Stay?

3

No, it is proper to actively litigate them so long as the Creditor is not taking steps to collect a prior debt. In fact, public policy supports that a litigant should bring to the Court's attention that the vexatious filing was filed in violation of Court order, rather than let a vexatious litigator mislead the Courts.

Finally, Stockman complains that the respondents have conspired with members of the Media Corps to harm him by making "public" the Administrative Complaint filed against him by the Board of Medicine through LARA.

First, bankruptcy is not the proper venue for Dr. Stockman to gain relief from what he perceives to be this wrong.

Secondly, the information was gained from public sources and was offered to the Court as potentially helpful to the Court in assessing and approving a "plan" in this bankruptcy, and his pattern of behavior with respect to his obligations in legal or administrative proceedings. Further, should Dr. Stockman lose his license to practice medicine, that would impact his ability to continue with the re-organization of his world of debt.

4

Thirdly, as can be readily determined by an internet search, Dr. Stockman's actions and omissions – whether admitted or denied – have made him a person of notoriety long before this latest bankruptcy filing.

The Administrative Complaint arises out of Dr. Stockman's failure to complete an autopsy for a family in the U.P. None of the respondents know this family or have ever talked to them. The media has been "all over" the matter, as represented by Exhibit B, an MLive article from about a year ago that openly discusses the case and the avenue to an Administrative Complaint.

Put differently, MLive's audience is far larger than the audience the Respondents could claim in this Court proceeding.

## RESPONSE TO ALLEGED FACTUAL BASIS

1. Admitted, on information and belief.

2. It is admitted that a $551,800 Award was issued against Debtor David Stockman in the Circuit Court action; however, 18 months of interest and costs need to be assessed. Admitted that the $4,176 attorney fee sanction against Debtor Stockman from the Federal District Court

5

was issued on June 18, 2026, with mandatory payment within 30 days. It remains unpaid.

3. Admitted that on July 7, 2026, the Court accepted the bankruptcy pleading dated by Stockman on July 1, 2026.

4. Admitted that the Respondents responded in Federal Court to the Debtors post-bankruptcy filings, and requested that the Court consider various sanctions for the Debtor's willful violation of the Federal Court's pre-filing sanction against him. Respondent's assert their only other option would have been to ignore the post-petition actions taken in another Court to their eventual peril.

5. Admitted.

6. Admitted that post-petition actions were taken by the Respondents to protect them from post-petition actions of the Debtor.

7. Admitted that the Administrative Complaint was provided to the Court as part of the history of the Debtor's legal problems. The impact of the potential loss of the Debtor's medical license could definitely impact the "plan" that might be implemented in this bankruptcy.

8. Neither admitted nor denied for lack of knowledge of the Debtor's "understanding." The Respondents affirmatively aver that the actions raised by the Medical Board through LARA are certainly "public"

6

through a variety of media reports, including reports from the aggrieved parties in the matter that they were seeking relief through LARA. Debtor no doubt understands this. An AI search done today (which anybody could do) regarding the Debtor stated this:

> "… state and local authorities have confirmed that **the Michigan Department of Licensing and Regulatory Affairs (LARA) is actively pursuing state-level licensing actions against Dr. David L. Stockman.**

9. Denied as untrue.

10. Admitted that the Respondent's did not seek permission from this Court to respond to post-petition actions taken by the Debtor in other legal matters. The Respondents are in the process of seeking a Modification of the Stay in this Court so that the Circuit Court is finally allowed to consider the entry of a Judgment in this matter.

The Debtor's Motion states concurrence was sought from the Respondents. This statement is false.

7

**Legal discussion**

**Post-Petition Conduct and the Scope of the Automatic Stay**

The automatic stay under 11 USCS § 362 prohibits the commencement or continuation of judicial proceedings, or any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the bankruptcy case . However, the automatic stay does not apply to actions or proceedings arising from a debtor's post-petition conduct . Groner v. Miller (In re Miller), 262 B.R. 499 (2001).

When a debtor files a Chapter 11 bankruptcy petition and subsequently files a removal of a state court suit, the act of removal constitutes post-petition conduct . Groner v. Miller (In re Miller), 262 B.R. 499 (2001). Because the creditor's motion for sanctions and request for costs arise directly from this post-petition event, the motion does not violate the automatic stay . Groner v. Miller (In re Miller), 262 B.R. 499 (2001). Litigants may pursue and obtain a monetary judgment, such as a sanctions award, based on a debtor's post-petition conduct without seeking relief from the automatic stay, provided they do not attempt to collect or satisfy that judgment from property of the bankruptcy estate . Groner v. Miller (In re Miller), 262 B.R. 499 (2001).  A

8

creditor's motion for sanctions seeking to strike an improper post-petition removal and recover associated costs does not violate the bankruptcy stay.

**The Government Regulatory Exemption under (** 11 USCS § 362(b)(4)

Furthermore, even if the automatic stay were otherwise implicated, a motion for sanctions targeting litigation misconduct is protected under the governmental regulatory exemption of 11 USCS § 362, Berg v. Good Samaritan Hosp. (In re Berg), 230 F.3d 1165 ( C.A. 9th Circuit 2000), Wells Fargo Bank, NA v. Corte Freccia I, LLC, 2009 U.S. Dist. LEXIS 95864 (2009), Dingley v. Yellow Logistics. LLC (In re Dingley), 852 F.3d 1143 (2017). This statute exempts from the automatic stay the commencement or continuation of an action or proceeding by a governmental unit to enforce its police or regulatory power . Berg v. Good Samaritan Hosp. (In re Berg), 198 B.R. 557 (1996), Lockyer v. Mirant Corp., 398 F.3d 1098 (2005).

Federal courts apply two tests to determine whether an action falls within the § 362(b)(4) exemption:

- **The Public Policy Test:** This test distinguishes between proceedings that effectuate public policy and those that adjudicate private rights . Berg v. Good Samaritan Hosp. (In re Berg), 198 B.R. 557 (1996), Lockyer

9

v. Mirant Corp., 398 F.3d 1098 (2005). Sanctions proceedings for litigation misconduct, such as violating a court's standing order or filing an improper removal, serve the public policy purpose of protecting the integrity of the judicial system and deterring unprofessional conduct . Berg v. Good Samaritan Hosp. (In re Berg), 230 F.3d 1165 (2000), Wells Fargo Bank, NA v. Corte Freccia I, LLC, 2009 U.S. Dist. LEXIS 95864 (2009), Berg v. Good Samaritan Hosp. (In re Berg), 198 B.R. 557 (1996).

- **The Pecuniary Purpose Test:** This test asks whether the action relates to matters of public safety and health or primarily to the government's pecuniary interest in the debtor's property . Berg v. Good Samaritan Hosp. (In re Berg), 198 B.R. 557 (1996), Lockyer v. Mirant Corp., 398 F.3d 1098 (2005).  A sanctions motion targeting bad-faith procedural maneuvering does not seek to protect a pecuniary interest in the debtor's property, nor does it attempt to gain an advantage over other creditors in the bankruptcy proceeding . Lockyer v. Mirant Corp., 398 F.3d 1098 (2005).

Courts have held that civil contempt and sanctions proceedings (including awards of attorney's fees and costs) designed to deter litigation misconduct qualify under the § 362(b)(4) exemption . Berg v. Good Samaritan

10

Hosp. (In re Berg), 230 F.3d 1165 (2000), Wells Fargo Bank, NA v. Corte Freccia I, LLC, 2009 U.S. Dist. LEXIS 95864 (2009), Dingley v. Yellow Logistics. LLC (In re Dingley), 852 F.3d 1143 (2017). This exemption applies regardless of whether the sanctions are initiated by a private creditor or whether the resulting monetary award is ultimately payable to a private party . Berg v. Good Samaritan Hosp. (In re Berg), 230 F.3d 1165 (2000), Dingley v. Yellow Logistics. LLC (In re Dingley), 852 F.3d 1143 (2017), Berg v. Good Samaritan Hosp. (In re Berg), 198 B.R. 557 (1996).   The underlying order remains an exercise of the court's regulatory power to combat misconduct and enforce its own prior orders, rather than a mechanism to adjudicate private pre-petition debts . Wells Fargo Bank, NA v. Corte Freccia I, LLC, 2009 U.S. Dist. LEXIS 95864 (2009), Dingley v. Yellow Logistics. LLC (In re Dingley), 852 F.3d 1143 (2017), Berg v. Good Samaritan Hosp. (In re Berg), 198 B.R. 557 (1996).

As noted in In re Berg, U.S. Court of Appeals, Ninth Circuit, 200 F.3d 1165 (2000),

> "(...) the government regulatory exemption of § 362(b)(4) provides that the filing of a petition for bankruptcy does not stay "the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power." 11 U.S.C. § 362(b)(4) (Supp. 2000). **This exemption "prevents the bankruptcy court from becoming a haven for wrongdoers."** *O'Brien v. Fischel,* 74 B.R. 546, 550 (D. Haw. 1987)." (Emphasis supplied.)

As noted by Creditor GOF Finance in its Response/Motion to Convert, at Docket No. 44:

" David Stockman's ("Debtor") abuse of the legal system and particularly this Court has been intentional, continuous, and in bad faith. In the last 18 months, Debtor has filed at least 10 separate bankruptcies, either individually, or on behalf of an entity (in violation of local bankruptcy rules). Debtor has *never* filed schedules and has **never** had to testify at a 341 meeting, because all of his cases have been dismissed on a Show Cause Order (...) "

Debtor's pre-petition vexatious pattern of abuse of the legal system for causing delay and harassment to Creditors continues.   Since Petition Date of June 26, 2026, the Debtor has filed seven (7) additional adversary proceedings, state court lawsuits, federal removal actions post-petition:

1.      Docket 98-99, Adversary Proceeding ("A.P.") against Ziad Daoud.

2.      Docket 102-103, A.P. against Covenant Medical Center, Inc, Covenant Healthcare System, Carrie Travis, Ginny latty; Beth Charlton.

3.      Docket 116-117, A.P. against Garske, Hewitt and Rodenbo, PLC PLC, Stephan M. Gaus, John Doe 1-5.

4.      Docket 121-122, A.P. against GOF-C Finance.

5. Docket 123-124, A.P. against Wildfire Credit Union, Ben Denay, Karl L. Wenzloff, Wenzloff & Fireman, P.C., Stephan M. Gaus, Garske, Hewitt Rodenbo, PLC.

6. The unlawful Removal in violation of Vexatious Litigant Order which is the precedent to this matter.

7. On July 30, 2026, also filed in Saginaw County Circuit Court a lawsuit against Shane Starr, Sarah Atkins, Stephan M Gaus, Roshan Mahabir, M.D., Marcus Atkins, Cole Waterman, Briann D. Somerset, Russell L. Bush and Cole Waterman. Saginaw County Circuit Case #26-001695-NO.

The Bankruptcy Code provides a debtor a reasonable opportunity to straighten out the business/financial affairs. But in this case the debtor has instead used the Court's equitable relief to delay and harass creditors, and individuals, unjustly. From a public policy standpoint, bankruptcy courts must be sensitive to preventing abuse of the bankruptcy system by malicious or vexatious debtors, and vexatious litigation can cause consternation and raise concerns about impropriety, abuse, and manipulation of the legal system by a vexatious litigant.

13

In this case, the debtor is not using the bankruptcy nor the earlier ones as a opportunity to get himself working productively. Instead debtor is focusing on litigation terror tactics, at the expense of the Estate and the creditors. Debtor's power to file lawsuits, whether in state or federal courts should be removed. The case should be converted to Chapter 7. If it is not converted to Chapter 7, the DIP power to prosecute lawsuits in state and federal court should be removed. Otherwise, the time, expense and administration of the estate for the debtor, for this court, and for the multiple creditors will continue to exponentially multiply. It is detrimental to the Estate and to the creditors of the estate. And it is not just to the creditors and innocent defendants that they should be subjected to the debtor's vexatious and abusive actions.

The debtor has not taken any responsibility for his actions even though creditors have obtained judgment and arbitration awards against the debtor after extensive litigation. And the State of Michigan is apparently processing alleged claim(s) of malfeasance by the debtor with respect to professional responsibilities. Instead of addressing these areas of potential responsibility or liability constructively, it appears that the Debtor's approach instead is to

14

continue to use artificial intelligence generated pleadings as an attack weapon.

Under 11 USCS § 1107, a debtor in possession is vested with the powers and duties of a trustee 11 USCS § 1107, acting as a fiduciary to the estate and its creditors In re Marvel Entertainment Group, 140 F.3d 463. However, this stewardship can be terminated. Under 11 USCS § 1104, a party in interest or the United States trustee may request the appointment of a trustee 11 USCS § 1104.

A debtor in possession in a Chapter 11 bankruptcy can be removed and replaced by an independent trustee if the debtor's propensity to excessively or vexatiously litigate warrants such removal 11 USCS § 1104, In re Marvel Entertainment Group, 140 F.3d 463. Under the Bankruptcy Code, a debtor in possession generally retains control of the estate In re Climate Control Mech. Servs., 585 B.R. 192, but the court must order the appointment of a trustee at any time prior to plan confirmation upon a showing of "cause" under 11 USCS § 1104, or if such an appointment is in the best interests of the creditors and the estate under 11 USCS § 1104, In re Marvel Entertainment Group, 140 F.3d 463. Vexatious or excessive litigation can satisfy both standards In re Marvel Entertainment Group, 140 F.3d 463.

Appointment of a Trustee for "Cause" under 11 USCS § 1104(a)(1)

mandates the appointment of a trustee "for cause, including fraud,

dishonesty, incompetence, or gross mismanagement... or similar cause" 11

USCS § 1104. Because the statute uses the term "including," the listed

grounds are non-exclusive, and courts maintain broad discretion to determine

what constitutes "similar cause" based on the totality of the circumstances In

re Marvel Entertainment Group, 140 F.3d 463, Committee of Dalkon Shield

Claimants v. A.H. Robins Co., 828 F.2d 239, In re Sparhawk LLC, 2026 Bankr.

LEXIS 1064.

A debtor's propensity to engage in excessive or vexatious litigation can

rise to the level of "cause" under 11 USCS § 1104(a)(1) in the following ways:

- Fiduciary Breach and Waste of Assets: A debtor in possession owes strict fiduciary duties to the estate In re Marvel Entertainment Group, 140 F.3d 463. Engaging in costly, relentless, and unjustified litigation may constitute a waste or squandering of corporate assets In re Sparhawk LLC, 2026 Bankr. LEXIS 1064, In re Am. Tool & Mold, Inc., 2026 Bankr. LEXIS 1679 or represent "gross mismanagement" 11 USCS § 1104, 11 USCS § 1112.

- Acrimony and Gridlock: Courts have held that deep-seated conflict, animosity, and extreme acrimony between a debtor and its creditors rise to the level of "cause" In re Marvel Entertainment Group, 140 F.3d 463. When a debtor's litigious propensity threatens to engulf the estate in "costly and legalistic bickering over the entire range of the reorganization process," the court is justified in appointing a neutral

trustee to prevent complete gridlock <u>In re Marvel Entertainment Group, 140 F.3d 463</u>.

Even in the absence of a specific finding of fault or "cause" under <u>11 USCS § 1104</u>(a)(1), a court may appoint a trustee under <u>11 USCS § 1104</u>(a)(2) if it is in the "interests of creditors, any equity security holders, and other interests of the estate" <u>11 USCS § 1104</u>, <u>In re Am. Tool & Mold, Inc., 2026 Bankr. LEXIS 1679</u>. In evaluating whether an appointment under <u>11 USCS § 1104</u>(a)(2) is appropriate, courts balance several factors, including:

1. The trustworthiness of the debtor <u>In re Am. Tool & Mold, Inc., 2026 Bankr. LEXIS 1679</u>, <u>Keeley & Grabanski Land P'ship v. Keeley (In re Keeley & Grabanski Land P'ship), 455 B.R. 153</u>;

2. The debtor's past and present performance and prospects for rehabilitation <u>In re Am. Tool & Mold, Inc., 2026 Bankr. LEXIS 1679</u>, <u>Keeley & Grabanski Land P'ship v. Keeley (In re Keeley & Grabanski Land P'ship), 455 B.R. 153</u>;

3. The confidence (or lack thereof) of creditors and the business community in present management <u>In re Am. Tool & Mold, Inc., 2026 Bankr. LEXIS 1679</u>, <u>Keeley & Grabanski Land P'ship v. Keeley (In re Keeley & Grabanski Land P'ship), 455 B.R. 153</u>; and

4. The benefits derived from the appointment of a trustee balanced against its costs <u>In re Am. Tool & Mold, Inc., 2026 Bankr. LEXIS</u>

17

1679, Keeley & Grabanski Land P'ship v. Keeley (In re Keeley & Grabanski Land P'ship), 455 B.R. 153.

A debtor's insistence on vexatious litigation severely damages creditor confidence and undermines the prospects of a successful reorganization In re Marvel Entertainment Group, 140 F.3d 463, Keeley & Grabanski Land P'ship v. Keeley (In re Keeley & Grabanski Land P'ship), 455 B.R. 153. If the court determines that the selection of a reorganization plan is best achieved by removing a highly combative debtor and installing a "neutral and efficient fiduciary," it can appoint a trustee under 11 USCS § 1104(a)(2)  In re Marvel Entertainment Group, 140 F.3d 463.

## **CONCLUSION:**

In conclusion, the Bush motion to strike the improper Removal and obtain costs did not violate the automatic stay. The debtor's post-petition conduct is not shielded by the stay, and the proceeding falls squarely within the court's regulatory power under ( 11 USCS § 362. b)(4) to deter bad-faith litigation tactics.

**RELIEF REQUESTED:** Accordingly, your responding party requests:

1. The Debtor's motion for sanctions be denied.

18

2.	With respect to the recently filed state court case, that the court issue a comfort order lifting the automatic stay and allowing all defendants in that action to pursue answers, responsive pleadings and motions, discovery proceedings including depositions, requests for production of documents and other appropriate pleadings, etc. as typically involved in such a litigation proceeding.

3.	That this honorable court convert this present proceeding to a Chapter 7 proceeding and have a Chapter 7 trustee appointed. Further that the trustee can then evaluate the merits and demerits of the multiple litigation proceedings of the debtor and determine whether such proceedings should be dismissed, prosecuted, or settlement and negotiations pursued.

4.	In the event that the case is not converted to Chapter 7, order that a special trustee be appointed for the purpose of handling, settling, dismissing, prosecuting or otherwise disposing of any and all other present or future litigation of the debtor.

Respectfully submitted,
Garske, Hewitt & Rodenbo, PLC

Dated: August 10, 2026

/s/ Stephan Gaus
Atty for Russell Bush, MD
708 S. Euclid Ave.
Bay City, MI 48706

19

989-355-0100
Email: gaus@ghr.law

## CERTIFICATE OF SERVICE

I hereby certify that on August 10, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I served a copy upon the following pro se party by electronic mail:

David Lewi-Emmanuel Stockman

5805 McCarty Road

Saginaw, MI 48603

dstockma4@icloud.com

/s/ Stephan Gaus

Stephan Gaus

| | Item | Which Court | Who filed it | date signed | date filed |
|---|---|---|---|---|---|
| 1 | Vol. Pet. For Bankruptcy | Opperman | DS | 6/26/2026 | 6/26/2026 |
| 2 | Notice of Removal | Drain 4th Removal | DS | 7/1/2026 | 7/6/2026 |
| 3 | Bush Motion to Strike | Drain 4th Removal | SG | 7/15/2026 | 7/15/2026 |
| 4 | Notice of Appeal | Drain 3rd Removal | DS | 7/16/2026 | 7/17/2026 |
| 5 | Notice of Appeal 2 | Drain 2nd Removal | DS | 7/17/2026 | 7/17/2026 |
| 6 | Hearing Record | Opperman | | | 7/23/2026 |
| 6 | Debtor's Mot to Show Cause | Opperman | DS | 7/24/2026 | 7/24/2026 |

**EXHIBIT**

A