**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

In re:
**DAVID LEWI-EMMANUEL STOCKMAN,**
Debtor and Debtor-in-Possession.
____________________________________/

**Case No.** 26-20982-dob
Chapter 7
Hon. Daniel S. Opperman

# DEBTOR'S RESPONSE IN OPPOSITION TO GOF FINANCE-C, LLC'S MOTION FOR AUTHORITY TO TAKE RULE 2004 EXAMINATION [DKT. 129], REQUEST TO DENY WITHOUT PREJUDICE, AND ALTERNATIVE REQUEST FOR PROTECTIVE AND LIMITING RELIEF

David Lewi-Emmanuel Stockman (the "Debtor"), appearing pro se as debtor and debtor-in-possession, timely responds to GOF Finance-C, LLC's Motion for Authority to Take Deposition of Debtor and Request Production of Documents Pursuant to Fed. R. Bankr. P. 2004, Docket No. 129 (the "Motion"). The Debtor does not contend that Rule 2004 is unavailable to a creditor in every circumstance. The objection is to this Motion, this proposed order, and this eight-page Exhibit G as drafted.

GOF asks the Court to approve wholesale a prepetition state-court collection demand that GOF itself admits is "the exact same" document request used almost a year earlier; compel five years of records touching virtually every part of the Debtor's financial, professional, business, family, electronic, and litigation life; reach records of separate nondebtor entities and relatives; compel passwords and access credentials; and impose a fourteen-day production deadline before anyone

has determined what is actually discoverable. Dkt. 129 at 6 n.4, 10-11, 73-79, 94-101.

The request is also made while an adversary proceeding between these same parties is pending and directly concerns the amount and enforceability of GOF's asserted debt, the application of payments, foreclosure credits, collateral values, rents and other recoveries, secured status, dischargeability, accounting, and potential restitution. Those subjects belong in adversary discovery under Bankruptcy Rules 7026 through 7037. The Court should deny Dkt. 129 without prejudice. If the Court permits any Rule 2004 inquiry, it should first separate true estate-administration issues from the pending GOF litigation and impose specific protective limits.

**I. THE PENDING GOF ADVERSARY PROCEEDING CHANGES THE DISCOVERY ANALYSIS**

1. The Debtor commenced an adversary proceeding against GOF in this Court, reflected in the main-case docket at Docket Nos. 121-122. The assigned adversary number should be inserted in the filed copy once confirmed from the adversary docket.

2. The adversary proceeding places directly at issue the amount GOF contends remains owing, the original commercial obligation and guaranty, payments and their application, interest and fee calculations, the Ohio judgment and Michigan enforcement, foreclosure transactions, collateral values, rents and deposits, other

property-derived recoveries, the existence and amount of any deficiency, secured status, dischargeability, and the Debtor's request for accounting and restitution.

3. Once an adversary proceeding commences, the ordinary adversary discovery rules govern discovery concerning the claims and defenses in that proceeding. Bankruptcy Rules 7026 through 7037 provide reciprocal discovery tools, including depositions, interrogatories, document requests, requests for admission, protective orders, and motions to compel.

4. In Richardson v. Younce, Adv. Proc. No. 22-80070 (Bankr. W.D. Mich. June 26, 2023), the bankruptcy court explained that once an adversary proceeding commences, the parties become subject to the general discovery rules and may not use Rule 2004 for discovery in that proceeding. The court identified this as the 'pending proceeding' rule and relied on In re Great Lakes Comnet, Inc., 558 B.R. 194, 197 (Bankr. W.D. Mich. 2016). Although persuasive rather than binding here, it is Michigan bankruptcy authority directly addressing this procedural distinction.

5. The distinction matters here because GOF should not receive one-way investigatory discovery in the main case concerning the very debt and accounting now being litigated in the adversary while the Debtor must use the reciprocal protections of Rules 7026 through 7037 to obtain the corresponding ledger, payment, foreclosure, valuation, rent, and fee evidence from GOF.

6. The Debtor therefore requests a practical line: subjects genuinely concerning administration of the broader estate and not involved in the GOF adversary may potentially be examined under Rule 2004; subjects concerning the claims and defenses between GOF and the Debtor should proceed in the adversary proceeding.

## II. GOF DID NOT FOLLOW E.D. MICH. LBR 2004-1 BEFORE SEEKING A COMPULSORY ORDER

7. E.D. Mich. LBR 2004-1(a) requires a person seeking to examine the debtor to attempt to arrange a mutually convenient date, time, and place before filing a motion. If agreement is not reached after reasonable efforts, the motion must specifically state the efforts made, the proposed date, time, and place, and the documents sought.

8. Before Dkt. 129 was filed, no attorney for GOF contacted the Debtor to propose a mutually convenient date, time, and place for a Rule 2004 examination, as set forth in the accompanying declaration.

9. Dkt. 129 does not identify any scheduling effort with the Debtor. It does not propose an examination date, a time, or a place.

10. Instead, GOF asks for a floating order under which the Debtor must first produce the entirety of Exhibit G within fourteen days and then provide testimony within fourteen days after GOF decides it has received the requested production.

11. The Debtor is pro se. The fact that LBR 2004-1 speaks of contacting debtor's counsel does not make its scheduling purpose disappear when no counsel exists.

GOF knew how to contact the Debtor and could have attempted to arrange the examination directly. At minimum, the Motion still fails to state the date, time, and place expressly required when a contested motion is filed.

12. Denial without prejudice is an appropriate and modest remedy. It preserves any legitimate Rule 2004 right while requiring GOF to use the procedure prescribed by this Court.

**III. GOF'S PROPOSED ORDER IS BROADER THAN RULE 2004 ITSELF AND IMPROPERLY MIXES RULE 2004 WITH RULE 7030**

13. Current Rule 2004(b) provides that an examination 'may relate only to' the Debtor's acts, conduct, or property; liabilities and financial condition; matters affecting administration of the estate; discharge.

14. GOF's proposed order does not use that standard. It would authorize testimony on 'all matters that may be relevant to the Movant's investigation.' Dkt. 129 at 11.

15. 'Movant's investigation' is undefined and is not the scope stated in Rule 2004(b). A private creditor's chosen investigation cannot define its own jurisdictional or discovery boundary.

16. The proposed order also directs the Debtor to provide oral testimony 'pursuant to Fed. R. Bankr. P. 7030.' Rule 7030 is the adversary-proceeding deposition rule. GOF should not obtain the expansive scope it attributes to Rule 2004 while simultaneously invoking an adversary discovery rule in the same order.

17. The Court should not enter GOF's proposed order. Any order should use Rule 2004(b)'s text, exclude adversary-overlap subjects, and establish a definite date, time, place, and scope only after the permitted document categories are resolved.

## IV. GOF ADMITS EXHIBIT G IS A RECYCLED STATE-COURT COLLECTION DEMAND, NOT A BANKRUPTCY-SPECIFIC REQUEST

18. GOF states in footnote 4 that the documents requested here are 'the exact same documents requested almost one year ago in connection with Movant's state court creditor's exam.' Dkt. 129 at 6 n.4.

19. That admission is consequential. Exhibit G was not drafted in response to the schedules in this case. It predates the present Chapter 11 case, the Subchapter V plan process, the present adversary proceeding, and the need to distinguish individual estate property from separate entity property.

20. A year-old collection subpoena does not become properly tailored bankruptcy discovery simply because it is attached to a Rule 2004 motion.

21. The Court should require GOF to identify the actual bankruptcy issue for each surviving category and, if any Rule 2004 examination remains appropriate, serve a new bankruptcy-specific request after the adversary-overlap subjects are removed.

## V. THE PRIOR STATE-COURT CREDITOR-EXAM HISTORY DOES NOT ESTABLISH CONTEMPT OR ENTITLE GOF TO THE PRESENT RELIEF

22. GOF uses the prior state-court creditor examination as a narrative foundation for extraordinary relief here, repeatedly asserting that the Debtor 'ignored' discovery and sought this bankruptcy to avoid a contempt proceeding.

23. The record attached by GOF shows that GOF moved for an order compelling compliance, contempt, and a bench warrant. It also shows that the state court scheduled a hearing. Dkt. 129, Exs. E-F. GOF has not attached a final state-court order adjudicating the Debtor in contempt on GOF's motion or granting GOF a bench warrant.

24. A request for contempt is not a contempt adjudication. An accusation that a party intentionally 'avoided discovery' is not converted into an established fact by repetition in a later motion.

25. The Debtor does not deny that the district court's later remand opinion recites service of a September 12, 2025 subpoena and a scheduled October 17, 2025 creditor examination. The present objection is not premised on a false claim that the subpoena was never served. It is that the unresolved prior enforcement dispute cannot substitute for GOF proving that each present request is authorized and appropriately tailored under Rule 2004.

26. GOF's Michigan Affidavit and Notice of Entry of Foreign Judgment, attached as Exhibit C to Dkt. 129, identifies the judgment debtor in the Michigan form as

'BECKER-PRESSENTE, LLC, et al.' and does not separately type David Stockman in that judgment-debtor field. The attached Ohio judgment does expressly name David Stockman jointly and severally. The Debtor therefore does not ask this Court to adjudicate the ultimate domestication issue on this response; he asks only that GOF not present the Michigan procedural history as simpler or more conclusive than its own papers show.

27. Most importantly, whatever discovery may have been available in the 2025 state collection proceeding does not establish the scope of discovery available in this 2026 bankruptcy case after commencement of a GOF adversary proceeding.

## VI. THE 'DISCOVERY AVOIDANCE' LABEL IS A LITIGATION NARRATIVE, NOT EVIDENCE OF THE PROPRIETY OF EXHIBIT G

28. GOF's state-court motion did not merely describe its own subpoena. It affirmatively imported the Russell Bush litigation, relied on a bench-warrant history from that separate dispute, and labeled the Debtor a 'repeat offender.'

29. The Bush litigation was litigated against the Debtor by counsel including Stephan Gaus. The Debtor disputes the broader narrative that he has a generalized practice of 'avoiding discovery' and contends that substantially similar characterizations have been repeatedly used against him in litigation and public-facing pressure surrounding deposition and collection events.

30. The Court need not decide in this Rule 2004 dispute whether any lawyer coordinated rhetoric with any other lawyer or with the media. The point is

narrower and record-based: a label imported from another case is not evidence that every category in Exhibit G is proper, and repetition does not transform an allegation into an adjudicated fact.

31. Indeed, the transcript GOF itself attached to Dkt. 129 reflects that, when Mr. Gaus offered broad collateral commentary and media references at the May 22, 2025 Becker-Pressente hearing, this Court made clear that those collateral matters were not relevant to the finite issue then before it. Dkt. 129 at 64.

32. The same discipline is appropriate here. The finite questions are whether Dkt. 129 complies with LBR 2004-1, whether the pending adversary requires ordinary discovery for overlapping subjects, and whether Exhibit G is within Rule 2004(b). The Court should decide those questions without giving evidentiary weight to pejorative labels such as 'improper legal tricks,' 'repeat offender,' or generalized 'discovery avoidance.'

33. GOF is represented by multiple experienced attorneys. That makes the absence of a case-specific narrowing analysis more, not less, significant. The Court should require the represented creditor to identify the bankruptcy need for its requests instead of approving a prior collection demand wholesale.

## VII. GOF HAS NOT ESTABLISHED A RELIABLE PRESENT CLAIM AMOUNT, AND NO GOF PROOF OF CLAIM APPEARS ON THE CLAIMS REGISTER REVIEWED BY THE DEBTOR

34. GOF approaches Dkt. 129 as though it were collecting a fixed and undisputed deficiency. The record does not support treating the present amount as fixed.

35. GOF's Michigan domestication form states an amount of $1,768,175, excluding interest. The underlying Ohio judgment included $1,764,000 principal, unpaid interest installments, default interest, fees, and attorney-fee provisions.

36. The Debtor's adversary complaint alleges approximately $396,000 in payments and substantial foreclosure recoveries and seeks a transaction-level accounting because the present balance cannot be determined without GOF's ledger and application history.

37. The adversary proceeding also places at issue the treatment of the McLeod, Wenmar, Johnson Street, and other collateral-related recoveries and the fair-value and accounting consequences of those transactions.

38. As of August 19, 2026, based on the Debtor's review of the claims register, the Debtor has not located a proof of claim filed by GOF. The Debtor does not contend that the absence of a proof of claim automatically eliminates GOF's status as a party in interest for every purpose. It does underscore the impropriety of treating GOF as entitled to an unlimited collection examination before it has even committed on the claims register to a reconciled amount after payments and recoveries.

39. The appropriate response to a disputed bilateral accounting is adversary discovery and adjudication, not an estate-wide collection subpoena directed at family members, unrelated entities, passwords, every business counterparty, and every deposition transcript.

## VIII. EXHIBIT G IS FACIALLY OVERBROAD; THE DEBTOR OBJECTS TO EACH CATEGORY AS SET FORTH IN APPENDIX A

40. Exhibit G is exceptionally broad. It demands five years of complete banking materials, third-party transfer information, signature cards for entity and third-party accounts, retirement records, tax returns, business minute books, UCC filings, accounts receivable, inventories, financial statements, real-estate records, leases, personal-property records, insurance, collectibles, firearms, jewelry, watches, intellectual property, employment records, investments, trusts, marital agreements, wills, passports, driver's licenses, divorce materials, credit cards, every deposition transcript, cryptocurrency, NFTs, mobile-payment information, and more.

41. It expressly demands foreign or offshore account material involving affiliates, related entities, and relatives 'including the Debtor's wife and/or children.' Dkt. 129 at 74, 94-95.

42. It demands complete books and records for every business in which the Debtor has or had an interest, including five years of minute books, accounts receivable, inventories, bank statements, financial statements, and tax returns.

43. It demands title evidence for property owned not only by the Debtor but also by an entity with which the Debtor is affiliated.

44. It demands the name and contact information of every person or entity that has done business 'of any kind' with any business entity owned by the Debtor during the past five years. Dkt. 129 at 77-78, 98-99.

45. It demands every deposition transcript in any case during the past five years, without tying those cases to the bankruptcy estate or GOF.

46. Most strikingly, it demands 'all login and password information' for websites and social-media accounts. Dkt. 129 at 77, 98.

47. The Debtor specifically objects to surrendering passwords, PINs, multifactor-authentication codes, recovery codes, security answers, encryption keys, tokens, or any other access credential. Responsive information from a relevant account can be preserved and produced without handing a creditor the ability to enter, modify, impersonate, or access unrelated material in the account.

48. The Debtor also objects to any blanket order converting ownership of an interest in a corporation, professional corporation, or LLC into ownership of that entity's books and records. A Rule 2004 order directed to the individual Debtor should not operate as a substitute for proper process directed to a separate nondebtor entity.

49. The Debtor further objects to blanket discovery into independently owned information of his spouse, children, relatives, and other third parties absent a particularized showing linking the information to a property interest or transfer of the Debtor.

50. Appendix A addresses each subpart of Exhibit G and identifies whether the Debtor seeks denial, adversary-only treatment, or narrowing to an actual estate issue. The Debtor does not use overbreadth as a pretext to withhold legitimate current asset and income information; the requested remedy is tailoring.

## IX. NO RATIONAL PRODUCTION DEADLINE CAN BE SET BEFORE THE SCOPE IS DETERMINED

51. GOF's proposed order requires the entire Exhibit G production within fourteen days. That deadline assumes the answer to the very issue the Court must first decide: what must actually be produced.

52. Until adversary-overlap subjects are removed, third-party and nondebtor-entity requests are resolved, password demands are denied, privilege and confidentiality issues are identified, and any remaining five-year requests are narrowed, neither the Court nor the parties can rationally estimate the burden of production.

53. The Debtor therefore does not ask the Court simply to substitute thirty or forty-five days for GOF's fourteen days. No production clock should begin under Exhibit G as presently drafted.

54. If any Rule 2004 document production survives, GOF should first serve a revised request consistent with the Court's ruling. The parties should then confer concerning the actual volume, accessibility, possession, custody or control, form of production, privilege review, confidentiality, and a reasonable schedule based on what remains.

## X. PRIVILEGE, CONFIDENTIALITY, THIRD-PARTY RIGHTS, AND INFORMATION SECURITY MUST BE EXPRESSLY PROTECTED

55. GOF's proposed order contains no adequate protocol for attorney-client privilege, work product, confidential business information, personal identifiers, protected third-party information, or account security.

56. Any order should preserve all privileges and work-product protections; permit appropriate redaction of Social Security numbers, taxpayer identification numbers, complete account numbers, and other protected identifiers; protect confidential employee, patient, and third-party information; and provide a reasonable clawback mechanism for inadvertent production.

57. Protected health information and patient-identifying information should not be produced merely because it may reside in business systems. If GOF identifies a particular need for such information, it should proceed through legally compliant process and any appropriate protective order.

58. No password or authentication credential should be produced under any circumstance absent a separate, particularized order entered after notice and an opportunity to be heard.

**XI. REQUESTED RELIEF**

For these reasons, the Debtor respectfully requests that the Court enter an order:

A. DENYING Dkt. 129 without prejudice for failure to comply with LBR 2004-1 and because the Motion does not distinguish pending-adversary discovery from any legitimate non-overlapping Rule 2004 inquiry;

B. DETERMINING that discovery concerning GOF's asserted debt, accounting, payment application, interest and fees, Ohio judgment, Michigan enforcement, collateral, foreclosures, valuations, rents, deposits, post-foreclosure proceeds, deficiency, secured status, dischargeability, restitution, overpayment, and the parties' claims and defenses shall proceed under Bankruptcy Rules 7026 through 7037 in the pending GOF adversary proceeding;

C. DECLINING to enter GOF's proposed order;

D. DECLINING to enforce Exhibit G wholesale and requiring any renewed Rule 2004 request to be bankruptcy-specific, narrowly tailored, and limited to subjects outside the adversary proceeding;

E. PROHIBITING any compelled disclosure of passwords, PINs, MFA codes, recovery codes, security answers, encryption keys, authentication tokens, or other account-access credentials;

F. DENYING any blanket requirement to produce independently owned records of a spouse, children, relatives, or other third parties;

G. DENYING any blanket requirement to produce the complete books and records of nondebtor corporations, professional corporations, LLCs, partnerships, or other separate entities through an order directed solely to the Debtor;

H. DENYING the blanket request for the identity and contact information of every person or entity that has done business of any kind with every Debtor-affiliated business;

I. DENYING the blanket request for every deposition transcript from every case during the preceding five years and other categories, such as passports and unrelated domestic-relations materials, absent a particularized showing of relevance;

J. LIMITING any historical period to what GOF demonstrates is reasonably connected to a specific Rule 2004(b) subject;

K. PRESERVING attorney-client privilege, work product, confidentiality, privacy, third-party rights, and appropriate redactions, and providing that inadvertent production does not waive privilege;

L. PROHIBITING compelled production of protected patient or medical information absent a separate showing and legally appropriate protective process;

M. DECLINING to impose any production deadline until the Court determines the permissible scope, GOF serves revised requests consistent with that ruling, and the parties confer regarding actual burden and timing;

N. REQUIRING any Rule 2004 examination to have a definite date, time, place, and subject-matter scope established in accordance with LBR 2004-1;

O. LIMITING any examination to Rule 2004(b)'s enumerated subjects and rejecting the proposed standard of anything relevant to 'Movant's investigation';

P. PROHIBITING use of Rule 2004 as a means to circumvent reciprocal discovery in the pending adversary proceeding;

Q. DISREGARDING, for purposes of deciding Dkt. 129, pejorative and propensity-style characterizations such as 'improper legal tricks,' 'repeat offender,' and generalized 'discovery avoidance' that are not adjudicated findings establishing the propriety of the present requests;

R. DETERMINING that GOF's prior request for contempt and a bench warrant did not itself constitute an adjudication of contempt and does not validate Exhibit G;

S. REQUIRING a hearing before any order compelling the present Exhibit G production is entered;

T. RESERVING all rights and objections available to the Debtor at any later examination, including privilege, work product, scope, confidentiality, possession, custody, control, third-party ownership, and pending-adversary overlap;

U. RESERVING the Debtor's right to seek sanctions or other relief by a procedurally proper separate motion if later-developed evidence establishes sanctionable conduct; and

V. GRANTING such other and further relief as the Court deems just and appropriate.

Respectfully submitted,
/s/ David Lewi-Emmanuel Stockman
**DAVID LEWI-EMMANUEL STOCKMAN**
Debtor and Debtor-in-Possession, Pro Se
5805 McCarty Road
Saginaw, Michigan 48603
Telephone: (989) 341-3017
Email: dstockma4@icloud.com
Dated: August 19, 2026