**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION – BAY CITY**

| | |
|---|---|
| In re:<br><br>DAVID LEWI-EMMANUEL STOCKMAN,<br><br>Debtor. | Case No. 26-20982-dob<br><br>Chapter 7<br><br>Hon. Daniel S. Opperman |

**COLE WATERMAN'S OBJECTION TO MOTION FOR ORDER AUTHORIZING RULE 2004 EXAMINATION OF COLE WATERMAN AND PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION**

Cole Waterman ("Waterman"), by and through his undersigned counsel, hereby files this objection (this "Objection") to the Motion for Order Authorizing Rule 2004 Examination of Cole Waterman and Production of Documents and Electronically Stored Information (the "Motion"). In support of this Objection, Waterman respectfully states as follows:

**FACTUAL BACKGROUND**

1. David Lewi-Emmanuel Stockman ("Stockman" or the "Debtor") is the Debtor in this bankruptcy proceeding and the Movant.

2. Waterman is a public safety reporter for MLive, reporting primarily on Saginaw and Bay Counties.

3. Waterman has covered Stockman due to the public interest in the many

civil and regulatory disputes to which he is a party.

4. Stockman has previously attempted and failed to drag Waterman into meritless proceedings before this Court. In July 2025, Stockman filed Adversary Proceeding 25-02024 within the bankruptcy proceedings initiated by Magdalena Perez, No. 1:24-bk-21078. There, Stockman purported to sue Waterman, the owner of MLive, and other MLive employees for defamation. This Court dismissed the adversary proceeding with prejudice.

5. Stockman now targets Waterman again, seeking discovery from Waterman about Stockman's own estate. In doing so, Stockman attempts to improperly drag Waterman into Stockman's own bankruptcy proceedings without articulating any information sought that is relevant to these proceedings. Stockman's Motion is clearly designed to abuse and harass, and it should be denied.[1]

## OBJECTION

### I. Stockman has not Established the Requisite Cause for the Examination

6. Bankruptcy Rule 2004 provides that "[o]n motion of any party in interest, the court may order the examination of any entity." Fed. R. Bankr. P.

---

[1] Stockman has since filed an Emergency Motion for Sanctions against other non-parties; in that motion, Stockman seeks permission to serve a "Rule 45 preservation subpoena" on Waterman directing him to preserve communications with the individuals targeted, for a subpoena directing Waterman to produce all communications with those individuals, and for immediate deposition of Waterman. Stockman clearly seeks to deploy all discovery tools available to target and harass Waterman.

2004(a). The scope of a Bankruptcy Rule 2004 examination, however, is restricted by Bankruptcy Rule 2004(b), which provides that such examination may "relate only to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate, or to the debtor's right to a discharge . . . and any other matter relevant to the case or to the formulation of a plan." Fed. R. Bankr. P. 2004(b).

7. The party seeking to conduct a Rule 2004 examination bears the burden of showing good cause for the examination. *In re Davis*, 452 B.R. 610, 617 (Bankr. E.D. Mich. 2011) (quoting *Bank One, Columbus, N.A. v. Hammond* (*In re Hammond*), 140 B.R. 197, 201 (S.D. Ohio 1992)). "Good cause is established if the one seeking the Rule 2004 examination has shown that such an examination is reasonably necessary for the protection of its legitimate interests." *Id.*

8. Examinations under Rule 2004 are allowed for the "purpose of discovering assets and unearthing frauds" and, though such examinations have been compared to "a fishing expedition," there are limits to the scope of a 2004 examination. The mechanism may not be used for "purposes of abuse or harassment," and it "cannot stray into matters which are not relevant to the basic inquiry." *In re Gillespie*, No. 22-20855-DOB, 2023 WL 5598413, at *2 (Bankr. E.D. Mich. Aug. 29, 2023) (citing *In re Table Talk*, Inc., 51 B.R. 143, 145 (Bankr. D. Mass. 1985)). Because of this, a party cannot merely assert its intent to take a Rule

2004 examination and demand anything and everything it desires. The movant must state what he or she is looking for, and the documentation or testimony sought must be relevant to this inquiry. *In re Bakalis*, 199 B.R. 443, 450 (Bankr. E.D.N.Y. 1996) (denying production of requested documents not relevant in assisting trustee to decide whether he had potential claim against bank's board of directors). In addition, the Court must "balance the examiner's interest against the [subject]'s interest in avoiding the cost and burden of disclosure." *In re Davis*, 452 B.R. at 617.

9. Additionally, a Rule 2004 examination of a non-debtor is more limited than a rule 2004 examination of a debtor or its insiders. Rule 2004 is "creditor and trustee oriented" so that a debtor is allowed less latitude to engage in a "fishing expedition" for the purpose of discovering assets. *See In re Valley Forge Plaza Assoc.*, 109 B.R. 669, 674 (Bankr. E.D. Pa. 1990); *see also In re GHR Energy Corp.*, 35 B.R. 534, 537 (Bankr. D. Mass, 1983). "[T]he main function of the examination is to uncover defalcations involving the debtor and his management of the estate. ***The examination of third-parties is at best ancillary to that main purpose***." *In re Wilcher*, 56 B.R. 428, 434 (Bankr. N.D. Ill. 1985) (citation omitted, emphasis added). "A Rule 2004 examination is not intended to provide the *debtors* unlimited access to the internal affairs of its creditors and those employed by its creditors." *In re GHR Energy Corp.*, 33 B.R. 451, 455 (Bankr. D. Mass. 1983) (emphasis in original).

10. Here, Stockman, as the Debtor, requests that this Court order a 2004 examination of Waterman, a non-party member of the press, and the production of the identities of his sources and other communications and unpublished materials. (*See* Motion, Exhibit 6A and 6B.) The reason Stockman provided for requesting this information is "identifying and valuing possible estate claims, evaluating liabilities and defenses, understanding business and professional disruption, and assisting in administration of the Chapter 7 estate." (Motion, Exhibit 3.) This is nothing more than a conclusory recitation of the categories of information that may be pursued via a Rule 2004 examination. Stockman makes no effort to offer the specificity required.

11. Stockman does not indicate any assets or claims he believes this examination or production would be relevant to. Nor does he indicate in any way why his unarticulated need would justify ordering Waterman, who is not a party in interest in his bankruptcy, to shoulder the heavy burden of this discovery. To the contrary, it appears as though Stockman wishes to take discovery as to some undefined claim, in order to launch further civil litigation against Waterman. Rule 2004 is not a mechanism for a Debtor like Stockman to conduct a fishing expedition to support other causes of action to be pursued in other courts.

## II. The First Amendment Further Protects Waterman's Newsgathering from Discovery

12. Of course, Stockman's request is even more offensive given that it targets a member of the press based on his newsgathering. Though the Sixth Circuit

has declined to recognize a reporter's privilege, courts in the Sixth Circuit and this District have ruled that, in analyzing discovery directed to the media, courts must nevertheless "make certain that the proper balance is struck between freedom of the press and the obligation to all citizens to give relevant testimony." *In re Grand Jury Proceedings*, 810 F.2d 580, 586 (6th Cir. 1987). "[O]ne's status as a news-gatherer must be balanced along with the requesting party's need for the information, its relevance, and other well-established discovery factors that are addressed to the court's discretion." *Omokehinde v. Detroit Bd. of Educ.*, 251 F.R.D. 261, 265 (E.D. Mich. Dec. 13, 2007) (denying a motion to compel communications sent by a journalist to the plaintiff). *See also In re DaimlerChrysler AG Secs. Litig.*, 216 F.R.D. 395, 406 (E.D. Mich. 2003) (denying motion to compel compliance with subpoenas served on non-party reporters); *Davis v. Cnty. of Wayne*, No. 2:24-CV-10203, 2026 WL 789225, at *1 (E.D. Mich. Jan. 26, 2026), report and recommendation adopted, No. 2:24-CV-10203, 2026 WL 1082318 (E.D. Mich. Mar. 31, 2026) (denying discovery from journalist).

13. These protections prevent the conversion of the press into "private discovery agents":

> "If the parties to any lawsuit were free to subpoena the press at will, it would likely become standard operating procedure for those litigating against an entity that had been the subject of press attention to sift through the press files in search of information supporting their claims. The resulting wholesale exposure of press files to litigant

> scrutiny would burden the press with heavy costs of subpoena compliance, and could otherwise impair its ability to perform its duties-particularly if potential sources were deterred from speaking to the press, or insisted on remaining anonymous, because of the likelihood that they would be sucked into litigation ... And permitting litigants unrestricted, court-enforced access to journalistic resources would risk the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties."

*Daimler Chrysler*, 216 F.R.D. at 406 (quoting *Gonzales v. Nat'l Broadcasting Co., Inc.*, 194 F.3d 29, 35 (2nd Cir. 1999)).

14. Here, Stockman requests that this Court order a 2004 examination of Waterman, a member of the press, and the production of the identities of his sources and other communications and unpublished materials. (*See* Motion, Exhibit 6A and 6B.) Stockman further asserts that he believes Waterman "may possess information or records concerning the chronology, sourcing, receipt, transmission, and publication of information concerning the Debtor and estate-related matters" and demands all communications and identification of sources. (Motion, Exhibits 6A and 6B.)

15. Stockman's demand would require Waterman to shoulder the heavy burden of discovery on his constitutionally protected reporting and confidential sources. This burden is especially onerous where Waterman was reporting ***on Stockman***—Stockman himself possesses information regarding the matters underlying Waterman's reporting, and the press is not to be the investigatory arm of

a private litigant, whether in bankruptcy or any proceeding. *See Daimler Chrysler*, *supra*.

## CONCLUSION

16. Stockman's Motion is an abuse of the Rule 2004 examination, targeting a member of the press to support Stockman's fishing for evidence related to causes of action he hopes to bring against Waterman. It is irrelevant to the proceeding at bar. The Motion violates the basic tenants of Rule 2004 and unnecessarily burdens the free press, in contravention of the First Amendment and basic discovery principles. For the reasons set forth herein, Waterman respectfully requests that the Court deny the Motion and grant such other relief as is just and proper.

Respectfully submitted,

HONIGMAN LLP

*Attorneys for Cole Waterman*

By: */s/ Scott B. Kitei*
J. Michael Huget (P39150)
Scott B. Kitei (P78064)
Andrew M. Pauwels (P79167)
Honigman LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
313.465.7000
mhuget@honigman.com
skitei@honigman.com
apauwels@honigman.com

Dated: September 8, 2026

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2026, the foregoing was electronically filed using the Court's e-filing system which was served on all counsel of record.

Date: September 8, 2026

*<u>/s/ Scott B. Kitei</u>*
Scott B. Kitei (P78064)